1  Victor A. Sahn (CA Bar No. 97299)
   vsahn@sulmeyerlaw.com
2  David S. Kupetz (CA Bar No. 125062)
   dkupetz@sulmeyerlaw.com
3  Claire K. Wu (CA Bar No. 295966)
   ckwu@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Grand Ave, Suite 3400
   Los Angeles, California 90071
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7

8  Attorneys for collab9, LLC,
   Debtor and Debtor in Possession

9  **UNITED STATES BANKRUPTCY COURT**

10  **CENTRAL DISTRICT OF CALIFORNIA**

11  **LOS ANGELES DIVISION**

| | |
|---|---|
| 12  In re | Case No. 2:21-bk-12222-ER |
| 13  COLLAB9, LLC, a Delaware limited liability company, | Chapter 11 |
| 14 | **DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION LOAN SECURED BY SENIOR LIEN PURSUANT TO 11 U.S.C. § 364; (2) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (3) SCHEDULING FINAL HEARING ON MOTION; AND (4) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 15  Tax ID:  95-4650291 | |
| 16 | |
| 17         Debtor | |
| 18 | |
| 19 | |
| 20 | [Omnibus Declarations of Kevin B. Schatzle, Gina Lim, and Haze Walker Filed Concurrently Herewith] |
| 21 | |
| 22 | |
| 23 | <u>Hearing</u>: |
| 24 | Date:     To Be Determined<br>Time:    To Be Determined<br>Place:   Courtroom 1568 |
| 25 |          255 E. Temple St.<br>         Los Angeles, CA 90012 |
| 26 | |

27

28

DAP 2710513v2

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE TWENTY LARGEST GENERAL UNSECURED CREDITORS, AND OTHER PARTIES ENTITLED TO NOTICE:**

<u>**EMERGENCY MOTION**</u>

Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364, and 552(b)(1), and Local Bankruptcy Rules 2081-1(a)(9), 4001-2 and 9075-1, collab9, LLC, a Delaware limited liability company, the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "<u>Debtor</u>" or "<u>collab9</u>"), hereby moves this Court, on an emergency basis, for the entry of an interim order and a final order (the "<u>Motion</u>"):

(1) authorizing the Debtor to obtain a senior secured postpetition financing in the principal amount of $1,770,000 (the "<u>DIP Loan</u>"),[1] pursuant to section 364 of the Bankruptcy Code, from SecureComm. LLC, a Washington limited liability company (the "<u>DIP Lender</u>" or "<u>SecureComm</u>"), pursuant to the terms of the interim order (the "<u>Interim Order</u>") and that certain "Senior Secured Debtor in Possession Line of Credit Loan and Security Agreement" that is the subject of the Motion (the "<u>DIP Loan Agreement</u>"), by and between the Debtor and the DIP Lender in substantially the form attached hereto as <u>Exhibit 1</u> (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "<u>DIP Loan Agreement</u>");

(2) authorizing the Debtor to execute, deliver, and enter into the DIP Loan Agreement and other related loan documents (collectively, the "<u>DIP Loan Documents</u>"), and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(3) granting security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code) to the DIP Lender to secure all obligations of the Debtor under and with respect to the DIP Loan, subject to the payment of: (i) fees

---

[1] Plus interest, fees, and costs incurred on prepetition secured financing, as referenced below, as of time of satisfaction of said secured debt pursuant to the DIP Loan.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  of the United States Trustee as required under 28 U.S.C. § 1930(a)(6) fees (the "UST Fees"); and

2  (ii) allowed fees and expenses of the Debtor's professionals as set forth in the Interim Order

3  (collectively, the "Professional Fees");

4  　　　(4) approving the Debtor's proposed 13-week budget (the "Budget");

5  　　　(5) authorizing the Debtor's use of cash collateral and funding under the DIP Loan

6  Agreement to pay ordinary and necessary operating and administrative expenses pursuant to the

7  Budget, with the provision: (a) for flexibility in connection with the Budget such that the Debtor

8  may exceed the disbursements forecasted in the Budget by up to 20% on a line-by-line basis, and to

9  exceed aggregate disbursements forecasted in the Budget by a total of 15%, measured on a

10  cumulative weekly basis; and (b) that, to the extent any amount in a disbursement category is

11  unused during a particular period, such amount be preserved and available for use in any

12  subsequent period;

13  　　　(6) modifying the automatic stay under section 362 of the Bankruptcy Code to the extent

14  necessary to implement, effectuate, and perform under the terms and provisions of the DIP Loan

15  Documents and the Interim Order;

16  　　　(7) setting an emergency interim hearing (the "Interim Hearing") on this Motion pursuant to

17  Rule 4001 of the Federal Rules of Bankruptcy Procedure ("FRBP") and applicable Local

18  Bankruptcy Rules of this Court to consider entry of the Interim Order, which authorizes the Debtor

19  to borrow under the DIP Loan Documents;

20  　　　(8) finding that adequate notice of the Motion (specified below) has been provided;

21  　　　(9) finding that any credit extended and loans made to, cash collateral used by, and adequate

22  protection provided by the Debtor are in "good faith" pursuant to section 364(e) of the Bankruptcy

23  Code;

24  　　　(10) pursuant to FRBP 4001(b)(2) and 4001(c)(2), and applicable Local Bankruptcy Rules

25  of this Court, (a) scheduling a final hearing (the "Final Hearing") on the Motion to consider entry of

26  the Final Order authorizing the DIP Loan under the DIP Loan Documents on a final basis, and (b)

27  the approval of notice procedures with respect thereto;

28  　　　(11) waiving any applicable stay, including under FRBP 4001(b) and (c), and authorizing

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    the immediate effectiveness of the Interim Order; and

2        (12) granting related and ancillary relief.[2]

### BASIS FOR RELIEF SOUGHT AND NEED FOR INTERIM RELIEF

### ON EMERGENCY BASIS

5        The Motion is made pursuant to Local Bankruptcy Rules 4001-2 and 9075-1, Federal Rule

6    of Bankruptcy Procedure, and sections 105(a), 361, 362, 363, 364, and 552(b)(1) of the Bankruptcy

7    Code on the following grounds.

8        As explained in the omnibus Declaration of Kevin B. Schatzle, the Debtor's CEO, collab9 is

9    a cloud security service provider for managed voice, collaboration, conferencing and contact center

10    services for U.S. public sector and U.S. commercial customers.  Operating under the aegis of a

11    General Services Administration ("GSA") approved Federal Risk and Authorization Management

12    Program ("FedRAMP") Authority to Operate ("ATO") "in process" at the moderate level.  collab9

13    uniquely caters to the public sector marketplace.  collab9 was one of the first UC providers to be

14    FedRAMP-authorized by the U.S. Government and operate at the moderate impact level..

15        The Debtor believes it has built a valuable business and platform, cultivated important

16    relationships, and entered significant contracts.  However, harmed by actions of Avaya Inc.

17    ("Avaya"),[3] faced with a liquidity crisis, and in order to maintain and continue business operations,

18    preserve and protect what it has built, maximize the value of its business and assets, protect the

19    interests of creditors and contract counterparties, avoid interruption in service and harm to its

20    customers, and to preserve jobs for its employees, the Debtor obtained emergency secured funding

21    in February and March 2021, and collab9 obtained a commitment from SecureComm for a secured

22    postpetition line of credit of up to $1,190,000.[4]

---

[2] A more detailed description of the relief sought is set forth in the form of Interim Order (Exhibit B hereto).  Any description of the DIP Loan set forth in the foregoing recitation of relief sought is for informational purposes only.  If there are any inconsistencies between such description and the actual terms laid out in the Interim Order and the DIP Loan Documents (Exhibit A hereto), the latter documents control.

[3] Such actions are described in the omnibus declaration of Kevin B. Schatzle.

[4] The postpetition line of credit under the DIP Loan plus the roll-up of $580,000 in secured financing (plus (footnote continued)

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1      Prior to the commencement of this chapter 11 case on March 19, 2021 (the "Petition Date"),

2    one of DIP Lender's affiliates, Dollab LLC, provided financing to the Debtor in the amount of

3    $200,000, on a secured basis, pursuant to that certain Promissory Note, dated as of February 4,

4    2021 (the "First Prepetition Note"), and DIP Lender provided the Debtor with additional prepetition

5    financing in the amount of $380,000, on a secured basis, pursuant to that certain Promissory Note,

6    dated as of March  12, 2021 between Borrower and Lender (the "Second Prepetition Note").

7    Dollab assigned its rights in the First Prepetition Note to DIP Lender (the First Prepetition Note and

8    the Second Prepetition Note, as amended, modified or supplemented through the Petition Date, are

9    collectively referred to as the "Prepetition Senior Loan Agreement").

10      Notwithstanding that, as set forth in the omnibus Declaration of Kevin B. Schatzle and the

11    Declaration of Haze Walker filed in connection with this motion, no other lender is willing to

12    provide funding to the Debtor, SecureComm is willing to provide a line of credit to Borrower to pay

13    off the indebtedness due under the Prepetition Senior Loan Agreement and fund operations through

14    the line of credit to be provided under and pursuant to the terms and conditions of the DIP Loan.

15    As set forth in the Schatzle and Walker declarations, the Debtor has attempted to locate financing

16    from non-insider sources without success.   The Debtor is unable to locate any lender who would

17    make a loan to the Debtor under the current circumstances, even with the assistance of a firm

18    specializing in obtaining loan for companies attempting to work through financial challenges and

19    distress.

20      The Debtor's goal is to move forward in this case with an expeditious sale process and

21    effectuate a sale of the company's business/assets.  As set forth in the omnibus Declaration of

22    Kevin B. Schatzle, the Debtor needs the relief sought herein on an immediate basis in order to:  (a)

23    enable the Debtor to avoid damaging discontinuance or disruption to its operations and sustain its

24    operations while in chapter 11; (b) preserve the Debtor's ability to maximize the value of its estate;

25    (c) avoid the loss of employment for the Debtor's employees; (d) best protect and serve the interests

---

27    interest, fees (including attorneys' fees), and costs) under the prepetition secured funding results in the total
sum of the DIP Loan.

28

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  of the Estate and creditors; and (e) ensure continuity of operations of critical government

2  communications systems and avoid an extended (i.e., several months) interruption of those services.

3  As a result, an interim order authorizing the DIP Loan and the use of cash collateral on an

4  emergency basis, followed by a final order, is necessary to avoid immediate and irreparable harm to

5  the Debtor and the estate.

6  ### SUMMARY OF KEY TERMS OF DIP LOAN

7  The Debtor provides the following information regarding key terms of the DIP Loan:[5]

8  • **Borrower:** collab9, LLC (the Debtor, and sometimes referred to as "<u>Borrower</u>").

9  • **DIP Lender:** SecureComm. LLC (members of SecureComm, LLC, are Dollab, LLC,

10  and Dinco, Inc., the members of the Debtor).

11  • **DIP Loan Amount:** $1,770,000 plus fees, costs, and interest included as part of roll-up

12  of prepetition funded secured debt in the sum of $580,000.

13  • **Use of Proceeds And Purpose of Loan:** Fund ongoing operations and administrative

14  expenses and pay off the indebtedness due under the Prepetition Senior Loan Agreement.  Funds

15  will be advanced from the DIP Lender to the Debtor on a weekly basis to fund operations and

16  payment of expenses in accordance with the Budget.  As reflected in the Budget, the postpetition

17  line of credit under the DIP Loan will be in the sum of $1,190,000.

18  • **Interest Rate, Monthly Payments, And Fees:** Interest shall accrue on the at the rate of

19  12.00% per annum and shall be paid on a monthly basis.   Upon an Event of Default , the interest

20  rate shall increase to 18.00% per annum.  The Debtor shall be obligated to pay all of  DIP Lender's

21  reasonable fees and expenses, including attorneys' fees and costs, incurred in connection with the

22  DIP Loan.  Consistent with the prepetition secured financing, an origination fee of 2% is to be

23  charged.

24  • **Term:** The DIP Loan shall mature on June 20, 2021.

25  _____

26  [5] The following is only a summary of the key terms.  Parties are directed to the DIP Loan Agreement and
the Interim Order for actual and complete terms of the DIP Loan.  In the event of any inconsistency
27  between this summary (or any other summary or description in this Motion) and the Interim Order or DIP
Loan Agreement, the terms in the Interim Order shall control.

28

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL  213.626.2311 • FAX  213.629.4520

1      • **Collateral:**  All assets of the Debtor.

2      • **Other Material Provisions of Interim Order:**

3          (a) <u>Super-Priority Claim</u> – DIP Lender will have a super-priority claim to be paid ahead

4    of all other administrative expense claims, subject to the carve-out described below.

5          (b) <u>Budget</u> - Approval of the Budget, with the provision for flexibility in connection

6    with the Budget such that the Debtor may exceed the disbursements forecasted in the Budget by up

7    to 20% on a line-by-line basis, and to exceed aggregate disbursements forecasted in the Budget by a

8    total of 15%, measured on a cumulative weekly basis.  In addition, to the extent any amount in a

9    disbursement category is unused during a particular period, that amount be preserved and available

10   for use in any subsequent period.

11         (c) <u>Carve-Out</u> - As part of its request for approval of the Budget and authority to use

12   cash collateral, the Debtor seeks a "carve out" from the DIP Lender collateral for UST Fees in their

13   entirety and the allowed respective fees and costs of the Debtor's professionals, with the carve-out

14   specifically for the Debtor's bankruptcy counsel, SulmeyerKupetz capped at the sum of $275,000

15   with respect to fees and costs of SulmeyerKupetz (the "<u>Carve-Out</u>").

16         (d) <u>Milestones</u> – With respect to the sale process to promptly pursued by the Debtor, the

17   DIP Loan sets forth the following milestones:  (1) no later than 14 days following the

18   commencement of the Debtor's chapter 11 case, the Debtor shall file a combined motion for

19   approval of sale procedures and approval of a sale of substantially all of the Debtor's assets;  (2) no

20   later than May 20, 2021, a hearing shall be conducted by the Court on a sale of the Debtor's assets;

21   and (3) no later than May 31, 2021, as sale of the Debtor's assets shall be consummated.

22         • **Conditions Precedent:**

23         (a) <u>Bankruptcy Order</u> – The entry of an interim order granting the Motion.

24         (b) <u>Loan and Collateral Documents</u> – The execution and delivery of a debtor in

25   possession loan and security agreement and other loan and collateral documents that are acceptable

26   to the DIP Lender.

27

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL  213.626.2311 • FAX  213.629.4520

**EXHIBITS**

Attached hereto are the following: (1) Exhibit 1: The form of DIP Loan Agreement (and related documents); (2) Exhibit 2: The form of Interim Order; and (3) Exhibit 3: The required LBR Form F 4001-2.STMT.FINANCE required by LBR 4001-2(a).

**NOTICE OF THE MOTION**

The Debtor has provided or intends to provide notice of this Motion by telephone, overnight mail, e-mail, or hand delivery (if required) on the following parties and/or to their counsel: (i) the Office of the United States Trustee (the "UST"); (ii) the Debtor's 20 largest unsecured creditors; (iii) the Debtor's prepetition secured lender; (iv) Avaya, Inc, ("Avaya"), (v) the Internal Revenue Service; (vi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001, or 9014 or requesting to receive notice prior to the date hereof; and (vii) any other party this Court orders be provided with notice of this Motion (collectively, the "Notice Parties").

This Motion is based upon these moving papers and exhibits hereto, the Budget (attached as Exhibit 1 to the Declaration of Gina Lim), the accompanying memorandum of points and authorities, the concurrently-filed omnibus declaration of Kevin B. Schatzle (the "Omnibus Declaration") and declaration of Haze Walker and Gina Lim submitted in support of this motion, the record in this case, the arguments and representations of counsel, and any other evidence or argument that may be presented prior to or at the hearing on this Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court:

(1) grant the Motion on an interim basis and final basis;

(2) provide the relief requested in the Motion on an interim basis and as more particularly described in the Interim Order (Exhibit 2 hereto);

(3) enter the proposed form of Interim Order;

(4) schedule a Final Hearing on the Motion to consider entry of a Final Order granting the relief requested in the Motion on a final basis; and

(5) provide such other and further relief as is proper.

1    Dated: March 22, 2021            **Sulmeyer**Kupetz
A Professional Corporation

By:   */s/ David S. Kupetz*
        Victor A. Sahn
        David S. Kupetz
        Claire K. Wu
        Attorneys for Debtor and Debtor in Possesion
        collab9, LLC

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# **TABLE OF CONTENTS**

**Page**

I. FACTS ........................................................................................................................9

    A.    Brief Background ...............................................................................9

          1.    The Debtor.........................................................................9

          2.    Assets ..............................................................................10

          3.    Liabilities........................................................................10

    B.    Factors Precipitating Chapter 11 Filing .............................................10

    C.    The Debtor's Prepetition Secured Debt...............................................11

    D.    The Independent Director...................................................................11

    E.    Summary of Restructuring Goals And Means of Maximizing The Value of
The Estate .......................................................................................11

II. THE DIP LOAN AND USE OF CASH COLLATERAL.............................................12

    A.    The Debtor's Immediate Need For Authorization to Use Cash Collateral
and Access  To Line of Credit............................................................12

    B.    Inability to Obtain Financing on More Favorable Terms ......................13

    C.    Good Faith Finding .........................................................................15

    D.    The Budget .....................................................................................15

          1.    Approval of Budget ..........................................................15

          2.    Limited Flexibility in Budget And Carryover of Excess Cash ...................16

    E.    Carve-Out And Weekly Advances .....................................................16

III. THE COURT SHOULD AUTHORIZE THE DIP LOAN AND THE DEBTOR'S
PROPOSED USE OF CASH COLLATERAL ........................................................16

    A.    The Debtor Should be Authorized to Obtain The DIP Loan And Use Cash
Collateral to Maintain The Debtor's Business And Maintain And Preserve
The Value of The Debtor's Assets .....................................................16

    B.    The Court Should Authorize The Granting of Postpetition Liens And Other
Protections to The DIP Lender Required Under The DIP Loan Agreement...........19

          1.    The Debtor is Unable to Obtain Unsecured Credit or Secured Credit
on a Junior Lien Basis .......................................................19

          2.    The DIP Loan is Fair, Reasonable, And Adequate ....................20

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

3.  The DIP Loan And Use of Cash Collateral Are Necessary And Proper .................................................................................. 20

4.  Good Faith Finding is Appropriate .............................................. 20

IV. THE WAIVER OF ANY APPLICABLE STAY IS APPROPRIATE ..................... 21

V. CONCLUSION ..................................................................................... 22

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

DAP 2710513v2

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Czyzewski v. Jevic Holding Corp.,*
    137 S. Ct. 973, 985  (2017) .................................................................... 18

*Ehrenberg v. Roussos (In re Roussos),*
    541 B.R. 721 (Bankr. C.D. Cal. 2015) ................................................... 21

*In re Ames Dept. Stores,*
    115 B.R. 34 (Bankr. S.D.N.Y. 1990) ...................................... 17, 19, 20

*In re Aqua Assoc.,*
    123 B.R. 192 (Bankr. E.D.Pa. 1991) ...................................................... 19

*In re Bakalis,*
    220 B.R. 525 (Bankr. E.D.N.Y 1998) ................................................... 21

*In re C.B.G. Ltd.,*
    150 B.R. 570 (Bankr. M.D.Pa. 1992) .................................................... 19

*In re C.E.N., Inc.,*
    86 B.R. 303 (Bankr. D. Maine 1988) ..................................................... 21

*In re Crouse Group, Inc.,*
    71 B.R. 544 (Bankr. E.D.Pa. 1987) ....................................................... 19

*In re Defender Drug Stores,*
    126 B.R. 76 (Bankr. D. Ariz. 1991), *aff'd* 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992)........ 18

*In re Ellingsen MacLean Oil Co.,*
    834 F.2d 599 (6th Cir. 1987).................................................................. 18

*In re Photo Promotion Associates, Inc.,*
    87 B.R. 835 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d. Cir. 1989)............................ 18

*In re Simasko Production Co.,*
    47 B.R. 444 (D. Colo. 1985) ................................................................. 17

*In re Snowshoe Co.,*
    789 F.2d 1085 (4th Cir. 1986)................................................................ 19

*In re T.M. Sweeney & Sons LTL Services, Inc.,*
    131 B.R. 984 (Bankr.N.D.Ill.1991) ...................................................... 18

*Richmond Leasing Co. v. Capital Bank N.A.,*
    762 F.2d 1303 (5th Cir. 1985)................................................................ 20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, **A Professional Corporation**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# **STATUTES**

11 U.S.C.
 § 1107(a) ................................................................................................................ 17

11 U.S.C. §
 1108 ....................................................................................................................... 17

11 U.S.C. § 363 ....................................................................................................... 21

11 U.S.C.
 § 363(c)(1) ......................................................................................................... 16, 17

11 U.S.C. §
 363(m) .................................................................................................................. 21

11 U.S.C. §
 364 ...................................................................................................... 18, 19, 20, 21

11 U.S.C.
 § 364(a) ............................................................................................................... 19

11 U.S.C.
 § 364(b) ......................................................................................................... 14, 19

11 U.S.C.
 § 364(c) ......................................................................................................... 17, 18

11 U.S.C.
 § 364(c)(1) ..................................................................................................... 14, 15

11 U.S.C.
 § 364(c)(2) ..................................................................................................... 14, 15

11 U.S.C.
 § 364(c)(3) ..................................................................................................... 14, 15

11 U.S.C.
 § 364(d) ......................................................................................................... 15, 18

11 U.S.C.
 § 364(d)(1) ............................................................................................... 14, 17, 18

11 U.S.C.
 § 364(e) ......................................................................................................... 15, 20

11 U.S.C. §
 503(b) .................................................................................................................. 17

11 U.S.C.
 § 503(b)(1) ..................................................................................................... 14, 17

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

## <u>RULES</u>

Fed. R. Bankr. P.
   Rule 6004 ................................................................................................................. 21

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.

## FACTS

**A.      Brief Background**

     **1.      The Debtor**

collab9 is a cloud security service provider for managed voice, collaboration, conferencing and contact center services for U.S. public sector and U.S. commercial customers.  Operating under the aegis of a General Services Administration ("GSA") approved Federal Risk and Authorization Management Program ("FedRAMP") Authority to Operate ("ATO") "in process" at the moderate level.[2] collab9 uniquely caters to the public sector marketplace.  collab9 was one of the first UC providers to be FedRAMP-authorized by the U.S. Government and operate at the moderate impact level.

As set forth in the Omnibus Declaration of Kevin B. Schatzle, the Debtor's CEO, the relief sought in the foregoing motion: (a) will enable the Debtor to avoid damaging disruption to its operations and sustain its operations while in chapter 11; (b) is critical to the Debtor's ability to maximize the value of its Estate; (c) best serves the interests of the Estate and creditors; and (d) ensures continuity of operations of critical government communications systems and avoids an extended (i.e., several months) interruption of those services.

As a subcontractor under government contracts with the Federal Government and localities, collab9 must maintain its operations involving the provisions of telephony/contact center services and hosting services to essential agencies if it is to ensure continuity of these critical

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the motion to which this memorandum of points and authorities is appended.

[2] "There are two approaches to obtaining a FedRAMP Authorization, a provisional authorization through the Joint Authorization Board (JAB) or an authorization through an agency.  In the Agency Authorization path, agencies may work directly with a Cloud Service Provider (CSP) for authorization at any time.  CSPs that make a business decision to work directly with an agency to pursue an Authority to Operate (ATO) will work with the agency throughout the FedRAMP Authorization process." *See www.fedramp.gov/agency-authorization/*

communications services and avoid extended (i.e., several months) service interruptions.

collab9 currently provides critical communication services to U.S. Customs and Border Protection ("CBP")—hosting the internal call centers for CBP's internal human resources (Offices of HRM), the CBP Information Center, and the Traveler Communications Center. collab9 also provides critical services to U.S. Health and Human Services ("HHS"), the Defense Nuclear Facilities Safety Board ("DNFSB"), and the CenturyLink (now Lumen) Internal Helpdesk for the Commonwealth of Pennsylvania ("COPA").  DNFSB advises the Secretary of Energy on the safety of the nation's nuclear defense facilities. HHS includes the National Institute of Health ("NIH"), which is one of the critical federal agencies overseeing the response to the COVID-19 pandemic.

**2.**      **Assets**

The Debtor's core assets include its FedRAMP authorization as well as several long-term contracts with institutional customers, which collab9 expects to become profitable in the future. The FedRAMP authorization is valuable and difficult to obtain, requiring extensive, long-term efforts, and costing collab9 millions to secure.

**3.**      **Liabilities**

The Debtor currently operates at a loss of approximately $518,000 per month, with a negative cash run rate of approximately $410,000.  As of the Petition Date, as stated above, the Debtor had secured debt in the aggregate principal amount of $580,000.  As of the Petition Date, the Debtor's unsecured debt amounted to approximately $20 million (this includes a disputed claim of approximately $10 million held by Avaya).

**B.**      **Factors Precipitating Chapter 11 Filing**

As set forth in the Omnibus Declaration, the Debtor's business and operations have been severely undermined by the actions of Avaya.  As a result and due to a liquidity crisis, without additional funding, collab9's operations would have had to cease in the beginning of March, 2021. However, in order to protect the interests of creditors, employees, and the Debtor, and due to the mission critical nature of collab9's communications services to essential government agencies, the Debtor found a path forward, including (as described above and in the Schatzle declaration) obtaining funding, a commitment for additional essential financing, and implementation of a

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1 process to protect and preserve its business and the value of its business/assets through a sale

2 process to be implemented in this chapter 11 case.

3 **C.    The Debtor's Prepetition Secured Debt**

4 Prior to the commencement of this chapter 11 case, one of DIP Lender's affiliates, Dollab

5 LLC, provided financing to the Debtor in the amount of $200,000, on a secured basis, pursuant to

6 that certain Promissory Note and Security Agreement, dated as of February 4, 2021 (the "First

7 Prepetition Note"), and DIP Lender provided the Debtor with additional prepetition financing in

8 the amount of $380,000, on a secured basis, pursuant to that certain Promissory Note and Security

9 Agreement, dated as of March  12, 2021 between the Debtor and the DIP Lender (the "Second

10 Prepetition Note").  Dollab assigned its rights in the First Prepetition Note to the DIP Lender (the

11 First Prepetition Note and the Second Prepetition Note, as amended, modified or supplemented

12 through the Petition Date, are collectively referred to as the "Prepetition Senior Loan

13 Agreement").  Under the Prepetition Senior Loan Agreements security interests were granted

14 favor of the lender in all of the Debtor's assets and related UCC-1 financing statements were

15 recorded.

16 The Debtor obtained the prepetition secured loans from "insiders" because it required

17 immediate funding to pay its ordinary operating expenses and certain professional fees and other

18 expenses associated with anticipated litigation against Avaya and the instant chapter 11 case, and

19 was unable to procure funding from other sources.

20 **D.    The Independent Director**

21 Prior to the Petition Date, George Blanco an experienced and expert restructuring

22 professional and financial advisor, was appointed as an independent director to the Debtor's Board

23 of Directors.  Mr. Blanco's role includes (without limitation) participation in the sale process to be

24 implemented in this case, evaluation of debtor in possession financing, and providing input

25 regarding formulation of the liquidating plan of reorganization contemplated to be presented

26 following completion of a sale.

27 **E.    Summary of Restructuring Goals And Means of Maximizing The Value of The Estate**

28 On March 19, 2021 (the "Petition Date"), the Debtor commenced the above-captioned

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  bankruptcy case.  The Debtor continues to manage and operate its business as a debtor in

2  possession.  No trustee or creditors' committee has been appointed in the Debtor's chapter 11 case.

3      The Debtor's intent is to move forward with an expeditious sale process and effectuate a sale

4  of the company's business/assets.  Time and funding to accomplish this goal is limited. Under the

5  circumstances of this case, the Debtor believes that the milestones set forth in the DIP Loan, while

6  requiring immediate and urgent action, are reasonable.

**II.**

**THE DIP LOAN AND USE OF CASH COLLATERAL**

A.      **The Debtor's Immediate Need For Authorization to Use Cash Collateral and Access**
        **To Line of Credit**

11      The Debtor's authorization to use cash collateral and access to the financing to be provided

12  under the DIP Loan is absolutely critical to the continued operation of the Debtor's overall

13  business, to otherwise maximize the value of the Estate, ensure continuity of operations of critical

14  government communications systems and avoid extended (i.e., several months) service

15  interruptions, and allow the Debtor the opportunity to implement an expeditious sale process

16  needed to preserve and maximize the value of the Estate.  The Debtor requires the DIP Loan for

17  additional working capital.  The Budget accompanying the DIP Financing Motion – which

18  identifies payments and expenses the Debtor requires to fund for the next 13 weeks post-petition

19  in order to maintain continued operations as the Debtor works towards a sale for the benefit of the

20  Estate and creditors – contemplates and is predicated upon the Debtor obtaining the DIP Loan.

21  The DIP Financing, together with the use of cash collateral, is necessary and essential to provide

22  the Debtor with the required working capital to fund operations until it accomplishes a sale.

23  Therefore, it is imperative that the Debtor obtain immediate authority to obtain the DIP Loan.

24  With certain expenses requiring the use of cash collateral and the funds from the DIP Loan each

25  week through the 13-week projected Budget, the Debtor seeks an emergency hearing on this

26  Motion.  The Debtor requires the immediate use of cash collateral and the use of cash collateral

27  alone is not sufficient to fund operations during this time period.  Further, in order to maintain

28  confidence of customers, contract counterparties, employees, and other stakeholders in the Debtor

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    and its ongoing operations, it is imperative the line of credit under the DIP financing be approved

2    and put into place without delay.

3         Without the prepetition secured loan from SecureComm, the Debtor would be out of cash

4    at this time. Further, if the Debtor does not obtain immediate authority to use cash collateral and

5    authority to implement the DIP Loan, the Debtor would essentially be forced out of business. In

6    short, the Debtor must have uninterrupted access to cash, which includes use of cash collateral and

7    the cash from the DIP Loan, to continue operations.

8         As reflected in the Budget, the Debtor cannot continue to fund operations with cash

9    collateral alone. Rather, the Debtor needs the additional financing under the DIP Loan. All

10   payments described in the Budget – which requires the funds from the DIP Loan - are necessary to

11   maintain and continue the Debtor's operations and to maximize the value of the estate. Failure to

12   make payments in accordance with the Budget could result in immediate and irreparable harm to

13   the Debtor's operations, the value of the estate, and the interests of creditors, could result in the

14   sudden discontinuation of operations of critical government communications systems and create

15   extended (i.e., several months) service interruptions, and the destructions of the opportunity for the

16   Debtor to run an expeditious sale process and consummate a sale. Based on the foregoing, absent

17   the immediate approval of the DIP Loan, and the Debtor's access to the loan proceeds, the Debtor

18   will not have sufficient funds to sustain operations to the irreparable detriment of the Debtor, the

19   Estate, creditors, customers and the Debtor's prospects for accomplishing a beneficial sale.

20        The Declaration of Gina Lim, CPA and the Debtor's interim CEO, submitted concurrently

21   herewith gives further information regarding the 13-week projection of operations, including all of

22   the income and expense presumptions that are found in that projection/budget. The Budget is

23   attached as Exhibit 1 to the Lim declaration.

24   **B.**    **Inability to Obtain Financing on More Favorable Terms**

25        During 2020, recognizing an impending liquidity crisis, the Debtor repeatedly sought

26   additional funding from Avaya. Avaya declined. The Debtor also sought funding from other

27   sources and determined that the only available funding would be provided by "insiders" of the

28   Debtor. No other lender was willing to fund the Debtor. Among others, the Debtor reached out for

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   funding to collab9's bank, Mechanics Bank, and the bank declined to make any loan to the Debtor.

2   The Debtor also sought funding from asset-based and non-conventional lenders who declined to

3   provide funding under the current circumstances.

4       The proposed DIP Loan is very favorable to the Debtor and the Estate, especially in relation

5   to any potential financing from any third-party sources.   As set forth in the omnibus Declaration of

6   Kevin Schatzle and the Declaration of Haze Walker submitted in support of this motion, the Debtor

7   has attempted to locate financing from other non-insider sources without success.   Those efforts

8   did not result in the procurement of more favorable financing.    Moreover, the Debtor is unable to

9   locate any lender who would make a loan to the Debtor under the current circumstances, even with

10  the assistance of a firm specializing in obtaining loan for companies attempting to work through

11  financial challenges and distress.

12      In short, the Debtor has been unable to obtain the requisite financing from sources other

13  than the DIP Lender on terms more favorable than the DIP Loan Agreement, and that the Debtor

14  believes realistically could close within the necessary expedited timeframe.    Given the Debtor's

15  current financial condition and capital structure, the Debtor is unable to obtain (i) adequate

16  unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code

17  or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior

18  lien on unencumbered assets of its estate under section 364(c)(2) of the Bankruptcy Code and (y) a

19  junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured

20  credit under section 364(d)(1) of the Bankruptcy Code, from sources other than the DIP Lender on

21  more favorable terms than those of the DIP Loan.

22      The only source of secured credit available to meet the Debtor's current needs and on an

23  immediate basis is the DIP Loan.  The Debtor requires both additional financing under the DIP

24  Loan and the use of cash collateral in order to satisfy its current post-petition liquidity needs.  After

25  considering all of its alternatives, the Debtor has concluded, in an exercise of its sound business

26  judgment, that the funding to be provided through the DIP Loan pursuant to the terms in the Interim

27  Order and the DIP Loan Agreement represents the best financing presently available to the Debtor.

28      The DIP Lender has indicated a willingness to provide the Debtor with a loan, but solely on

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

the terms and conditions set forth in the Interim Order and the DIP Loan Agreement.  Among other terms set forth in such documents, the Debtor was unable to obtain credit from the DIP Lender without providing it with various protections, including the granting of security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code (the "Postpetition Liens"), and priming liens pursuant to section 364(d) of the Bankruptcy Code) to secure all obligations of the Debtor under and with respect to the DIP Loan.

Therefore, after considering all of its current alternatives, the Debtor has properly concluded that the loan from the DIP Lender represents the best source of funding presently available to the Debtor.

**C.**     **Good Faith Finding**

As noted above, the DIP Lender is an insider of the Debtor.  The DIP Lender has consulted with separate counsel to provide it with advice and counsel with respect to the DIP Loan. Moreover, as discussed above, the terms of the DIP Loan are favorable to the Debtor and the estate under circumstances where funding is desperately needed, will provide an opportunity to implement as sale beneficial to all interested parties, and is not obtainable from other sources.  Thus, the Debtor believes that any credit extended or loan made by the DIP Lender will be in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

**D.**     **The Budget**

**1.**     **Approval of Budget**

The Debtor seeks to use the DIP Loan and cash collateral to fund operations and payment of administrative expenses pursuant to a Budget.  A true and correct copy of the 13-week Budget is attached as Exhibit 1 to the Declaration of Gina Lim, CPA and the Debtor's interim CFO, submitted in connection with this motion.

The Debtor requests authority to use cash collateral and DIP Loan proceeds in accordance with the Budget.  Absent emergency interim relief, the Debtor needs to use cash collateral to pay its employees, satisfy other operating expenses, pay certain administrative expenses, and to otherwise operate its business.

DAP 2710513v2

All payments that will be described in the Budget are those the Debtor believes are necessary to maintain and continue the Debtor's operations and to maximize the value of the Estate. The Debtor believes that the failure to make payment in accordance with the Budget could result in immediate and irreparable harm to the Debtor's operations, the value of the Estate, and the interests of creditors.

The DIP Lender has consented to the use of the DIP Loan Proceeds and its cash collateral in accordance with the Budget.  The Debtor's use of cash collateral is necessary in order to allow the Debtor to move forward with an approach designed to maximize the value of the Estate.

## 2.    Limited Flexibility in Budget And Carryover of Excess Cash

The Debtor also requests some flexibility in connection with the Budget such that the Debtor may exceed the disbursements forecasted in the Budget by up to 20% on a line-by-line basis, and to exceed aggregate disbursements forecasted in the Budget by a total of 15%, measured on a cumulative weekly basis.

Further, the Debtor requests that, to the extent any amount in a disbursement category is unused during a particular period, that amount be preserved and available for use in any subsequent period.

## E.    Carve-Out And Weekly Advances

As part of its request for approval of the DIP Loan, Budget, and use cash collateral, the Debtor seeks approval of the Carve-Out and weekly advances.  The Budget will account for such proposed Carve-Out and weekly payments.

## III.

## THE COURT SHOULD AUTHORIZE THE DIP LOAN AND THE DEBTOR'S PROPOSED USE OF CASH COLLATERAL

## A.    The Debtor Should be Authorized to Obtain The DIP Loan And Use Cash Collateral to Maintain The Debtor's Business And Maintain And Preserve The Value of The Debtor's Assets

Section 363 of the Bankruptcy Code governs the Debtor's use of property of its estate. Section 363(c)(1) provides in pertinent part that:

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

DAP 2710513v2                    16

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1
2
3

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

4

11 U.S.C. § 363(c)(1).  A debtor in possession has all the rights and powers of a trustee with respect

5

to property of the estate, including the right to use property of the estate in compliance with section

6

363 of the Code.  *See* 11 U.S.C. § 1107(a).  Section § 363(c)(2) establishes a special requirement

7

with respect to "cash collateral," by providing that the trustee or debtor in possession may not use,

8

sell or lease "cash collateral" under subsection (c)(1) unless (i) such entity that has an interest in

9

such collateral consents, or (ii) the court, after notice and a hearing, authorizes such use, sale or

10

lease.

11

Pursuant to Section 364(c), a debtor may, in the exercise of its business judgment, incur

12

secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the

13

best interest of the estate.  *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 448-9 (D. Colo.

14

1985) (authorizing interim financing agreement where debtor's business  judgment indicated

15

financing was necessary and reasonable for benefit of estate); *In re Ames Dept. Stores*, 115 B.R. 34,

16

38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts "permit debtors-in-

17

possession to exercise their basic business judgment consistent with their fiduciary duties").

18

Section 364(c) provides, in pertinent part, that:

19
20

> If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

21
22

>     (1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:

23

>     (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

24

>     (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

25

Section 364(d)(1) governs the incurrence of senior secured debt or "priming" loans.

26

Pursuant to Section 364(d)(1):

27
28

> the court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if—

DAP 2710513v2                                    17

(1) the trustee is unable to obtain such credit otherwise; and

(2) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1). Section 364 is structured with an escalating series of inducements which a debtor in possession may offer to attract credit during the post-petition period. *In re Photo Promotion Associates, Inc.*, 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d. Cir. 1989). Where a trustee or debtor in possession cannot otherwise obtain unsecured post-petition credit, such credit may be obtained under certain carefully proscribed conditions. *In re T.M. Sweeney & Sons LTL Services, Inc.*, 131 B.R. 984, 989 (Bankr.N.D.Ill.1991). For example, if creditors are unwilling to extend unsecured credit to a debtor in possession, further inducements are offered, with court approval after notice and a hearing, including, without limitation, liens equal to or senior to existing liens on encumbered property in accordance with 11 U.S.C. § 364(d). *In re Photo Promotion Associates, Inc.*, 87 B.R. at 839.

Section 364(c) also enumerates certain incentives that a court may grant to post-petition lenders. However, the list set forth in section 364(c) is not exhaustive. Courts have frequently authorized the use of inducements not specified in the statute. *See, e.g.*, *In re Ellingsen MacLean Oil Co.*, 834 F.2d 599 (6th Cir. 1987) (affirming financing order which prohibited any challenges to the validity of already existing liens); *In re Defender Drug Stores*, 126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to post-petition lender), *aff'd* 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized postpetition financial arrangements containing lender incentives beyond the explicit priorities and liens specified in section 364").

Furthermore, the Supreme Court has recognized that it is standard practice to approve "roll-ups" in debtor in possession financing, just as "first-day" wage orders, "critical vendor" orders are granted in chapter 11 cases. See *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017). This is appropriate where, as is the case here, the proposed DIP Financing is necessary to enable ongoing operations, preserve and protect the interests and maximize the value of the estate, allow the opportunity for the Debtor to implement an expeditious sale process, preserve employee jobs, and benefit the interests of creditors in general.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    The proposed transactions and use of cash collateral comports with all prerequisites and

2    should be approved.  Evidence supporting the relief sought by the foregoing motion and the exhibits

3    hereto, is contained in the omnibus Declaration of Kevin Schatzle, and the Declarations of Gina

4    Lim and Haze Walker submitted in support of this motion.

5    **B.**    **The Court Should Authorize The Granting of Postpetition Liens And Other**

6            **Protections to The DIP Lender Required Under The DIP Loan Agreement**

7            Two factors courts consider in determining whether to authorize post-petition financing

8    which contemplates the granting of a security interest in favor of the lender are: (1) whether the

9    debtor is unable to obtain unsecured credit per section 364(b), *i.e.*, by allowing a lender only an

10   administrative claim per section 364(b); and (2) whether the terms of the transaction are fair,

11   reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

12   *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D.Pa. 1987).  *See also*, *In re Aqua Assoc.*,

13   123 B.R. 192, 195 (Bankr. E.D.Pa. 1991).  In addition to the foregoing, a debtor in possession

14   seeking subordination of liens to new financing must establish adequate protection of the liens to be

15   subordinated to the new financing.  *In re C.B.G. Ltd.*, 150 B.R. 570, 571 (Bankr. M.D.Pa. 1992).

16   The Debtor submits that all of these standards are satisfied in this case.

17   **1.**    **The Debtor is Unable to Obtain Unsecured Credit or Secured Credit on a**

18           **Junior Lien Basis**

19           In satisfying the standards of Section 364, a debtor need not seek credit from every available

20   source, but should make a reasonable effort to seek other sources of credit available under § 364(a)

21   and (b).  *See, e.g.*, *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee had

22   demonstrated by good faith effort that credit was not available without senior lien by unsuccessfully

23   contacting other financial institutions in immediate geographic area; "the statute imposes no duty to

24   seek credit from every possible lender before concluding that such credit is unavailable"); *Ames,*

25   *supra*, 115 B.R. at 40 (finding that debtors demonstrated the unavailability of unsecured financing

26   where debtors approached four lending institutions).

27           As set forth in the omnibus Declaration of Kevin Schatzle and the Declaration of Haze

28   Walker, while the Debtor requires funding on an urgent basis to avoid immediate and irreparable

1   harm, there is no alternative source of funding available.  Accordingly, after considering all of the

2   alternatives, the Debtor has concluded that the DIP Loan represents the best (an only) financing

3   presently available to the Debtor.

4        **2.    The DIP Loan is Fair, Reasonable, And Adequate**

5        The Debtor submits that the terms of the proposed DIP Loan are fair, reasonable, and

6   adequate.  As explained above and set forth in the omnibus Declaration of Kevin Schatzle funding

7   is urgently needed to avoid immediate and irreparable harm and is not available from any other

8   source. Also see Declaration of Haze Walker re lack of any alternative funding source.

9        Based on the foregoing, the Debtor believes that (i) the terms and conditions of the proposed

10  DIP Loan are fair and reasonable, reflect the Debtor's exercise of prudent business judgment in

11  light of the current circumstances and are supported by reasonably equivalent value and fair

12  consideration, and (ii) the DIP Loan is being extended, issued or made, as the case may be, in "good

13  faith" within the meaning of Section 364(e).

14       **3.    The DIP Loan And Use of Cash Collateral Are Necessary And Proper**

15       While in determining whether to approve such a transaction, a Court is authorized to act in

16  its informed discretion (*In re Ames Department Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y.

17  1990)), the Court should give broad deference to the business decision of a chapter 11 debtor,

18  particularly with respect to a debtor's business judgment regarding the need for and proposed use of

19  funds.  *See Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).  As

20  the Court noted in *In re Ames Dept. Stores Inc.*, *supra*, "the court's discretion under section 364 is

21  to be utilized on the grounds that permit the reasonable business judgment [of the Debtor] to be

22  exercised . . ."  *In re Ames Department Stores, Inc.*, 115 B.R. at 40.

23       For the reasons set forth above and in the supporting declarations, the Debtor has  concluded

24  that obtaining the DIP Loan and use cash collateral is critically important to maximizing the

25  recovery for creditors, and is therefore in the best interests of the Debtor's estate.

26       **4.    Good Faith Finding is Appropriate**

27       As set forth in the Schatzle Declaration, the proposed DIP Loan was negotiated and entered

28  into in good faith, and the DIP Lender is entitled to a finding of good faith under § 364(e).

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    Furthermore, nothing in the Bankruptcy Code prohibits transactions with insiders.  Courts have

2    confirmed that, while transactions involving insiders, generally are subject to higher scrutiny, there

3    is no *per se* prohibition against approval of a loan, sale, or other transaction between the Debtor and

4    an insider.  *See, e.g.*, *Ehrenberg v. Roussos (In re Roussos)*, 541 B.R. 721, 730 (Bankr. C.D. Cal.

5    2015) ("Nothing in the Bankruptcy Code prohibits a sale to insiders [even though] insider sales are

6    subject to 'heighted scrutiny to the fairness of the value provided by the sale and the good faith of

7    the parties in executing the transaction"); *In re C.E.N., Inc.*, 86 B.R. 303, 306-07 (Bankr. D. Maine

8    1988) (recognizing that "transactions between debtor and [an insider] . . . are 'subject to greater

9    scrutiny than arms-length transactions,'" but confirming there is no *per se* rule disallowing

10   administrative expense status under 11 U.S.C. § 364 to an insider under all circumstances"); *In re*

11   *Bakalis*, 220 B.R. 525, 537-38 (Bankr. E.D.N.Y 1998) (approving sale of debtor assets to insider

12   group under section 363, finding insider group good faith purchase under section 363(m), and

13   recognizing no *per se* bad faith in insider transactions when "there has been no showing of any

14   untoward conduct," "no evidentiary support [of] extortionate conduct," and no showing of any

15   action "specifically directed at controlling the sale price or taking unfair advantage of bidders").

16                                                **IV.**

17                  **THE WAIVER OF ANY APPLICABLE STAY IS APPROPRIATE**

18         For the reasons noted herein, the Debtor will suffer immediate and irreparable harm if the

19   proposed interim order in not entered shortly after the commencement of this case.  The Debtor

20   requires the terms of the Interim Order to become immediately effective to ensure that the Debtor

21   will be able to obtain the funding and authority to use cash collateral under the Budget to pay

22   critical expenses as set forth in the Budget.  Based on the foregoing, the Debtor requests that any

23   applicable stay, including the stay provided under FRBP 6004, be waived to allow the Interim

24   Order to become immediately effective.

25

26

27

28

**V.**

**<u>CONCLUSION</u>**

Based upon all of the foregoing, the Court grant the Motion.

Dated: March 22, 2021

**Sulmeyer**Kupetz
A Professional Corporation


By: */s/ David S. Kupetz* _____
    Victor A. Sahn
    David S. Kupetz
    Claire K. Wu
    Attorneys for collab9, LLC
    Debtor and Debtor in Possession

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

DAP 2710513v2

22

# EXHIBIT 1

## SENIOR SECURED DEBTOR IN POSSESSION
## LINE OF CREDIT LOAN AND SECURITY AGREEMENT

THIS SENIOR SECURED DEBTOR IN POSSESSION LINE OF CREDIT LOAN AND SECURITY AGREEMENT ("Agreement") is entered into this __ day of March, 2021, between Securecomm. LLC, a Washington Limited Liability Company ("Lender"), and **collab9, LLC**, a Delaware limited liability company with its principal assets located in the State of Colorado ("Borrower" or "Debtor").  All schedules, riders and exhibits annexed hereto are incorporated herein and made a part hereof.

WHEREAS, on March 19, 2021 (the "Petition Date"), Borrower commenced Chapter 11 Case No. 2:21-bk-12222-ER (the "Chapter 11 Case") by filing a voluntary petition for reorganization under the Bankruptcy Code (as defined below), with the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court");

WHEREAS, Borrower continues to operate its business and manage its properties as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, prior to the Petition Date, one of Lender's affiliates, Dollab LLC, provided financing to Borrower in the amount of $200,000, on a secured basis, pursuant to that certain Promissory Note, dated as of February 4, 2021 (the "First Prepetition Note"), and Lender provided financing to Borrower in the amount of $380,000, on a secured basis, pursuant to that certain Promissory Note, dated as of March  12, 2021 between Borrower and Lender (the "Second Prepetition Note"), and whereas, Dollab assigned its rights in the First Prepetition Note to Lender (the First Prepetition Note and the Second Prepetition Note, as amended, modified or supplemented through the Petition Date, are collectively referred to as the "Prepetition Senior Loan Agreement").  True and correct copies of the First Prepetition Note and the Second Prepetition Note are attached hereto as Exhibits "1" and "2".  Further, Uniform Commercial Code Financing Statements were filed with respect to each of the First Prepetition Note and the Second Prepetition Note, respectively, and are also included in Exhibits "1" and "2";

WHEREAS, Lender is willing to provide a line of credit to Borrower to pay off the indebtedness due under the Prepetition Senior Loan Agreement and fund operations upon the Line of Credits and conditions set forth herein; and

WHEREAS, Borrower has agreed to secure all of the obligations under this Agreement by granting to Lender a security interest in and lien upon all or substantially all of its existing and after-acquired assets.

NOW, THEREFORE, for good and valuable consideration, the parties hereto, intending to be bound hereby, agree as follows:

**SECTION 1.    DEFINITIONS**

 1.1 <u>**Defined Line of Credits**</u>. When used in this Agreement or in any schedule or rider hereto, the following Line of Credits shall have the following meanings (Line of Credits defined in the singular to have the same meaning when used in the plural and *vice versa*).

"<u>Approved Budget</u>" means  that certain budget attached as an Exhibit to the Debtor's Motion for Approval of Debtor in Possession Financing filed with the Bankruptcy Court .

"<u>Bankruptcy Code</u>" means title 11 of the United States Code.

"<u>Bankruptcy Court</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Bankruptcy Default</u>" means the occurrence of any of the following in connection with the Chapter 11 Case:

 (a) the entry of an order in the Chapter 11 Case confirming a plan of reorganization that does not contain a provision for the full payment of all obligations under this Agreement;

 (b) the entry of an order amending, supplementing, staying, vacating or otherwise modifying this Agreement without the written consent of Lender;

 (c) the Final Order, in form and substance acceptable to Lender, is not entered promptly following the expiration of the Interim Order;

 (d) the Final Order, in form and substance acceptable to Lender, is not entered on or before the date that is thirty (30) days after the entry of the Interim Order;

 (e) the appointment of a trustee in the Chapter 11 Case or the appointment of  an examiner in the Chapter 11 Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of Borrower (or Borrower applies for, consents to, or acquiesces in, any such relief);

 (f) the dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code (or Borrower applies for, consents to, or acquiesces in, any such relief);

 (g) the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a Lien on any Collateral, or (ii) with respect to any Lien of or the granting of any Lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case is with respect to any portion of the Collateral having a value, individually or in the aggregate, in excess of $25,000 or which would otherwise have a Material Adverse Effect;

- 2 -

0024

(h)      the commencement of a suit or action against Lender by or on behalf of Borrower or Borrower's bankruptcy estate which challenges Lender's prepetition claims, Lender's postpetition claims or asserts any other theory under law which impacts the validity, priority and extent of Lender's secured liens and claims;

(i)      any relief granted to Avaya Holdings or any subsidiary or affiliate of Avaya Holdings to which Lender does not consent;

(j)      the breach of and/or failure of Borrower to perform any of its obligations under this Agreement; or

(k)      the Bankruptcy Court or any other court of competent jurisdiction enters an order or judgment, or Borrower applies for, consents to, or acquiesces in, the entry of such order or judgment, in the Chapter 11 Case modifying, limiting, subordinating or avoiding (i) the priority of any obligations owing to Lender under this Agreement, or (ii) the perfection, priority or validity of any Lien securing such obligations.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as the same may from time to time be in effect and applicable to the Chapter 11 Case.

"Bankruptcy Milestones"  Borrower's Bankruptcy Milestones include the following:

(a)      Sales Procedures Motion and Order: Seller upon the filing of its Bankruptcy Case shall do the following respecting obtaining approval of sales procedures, without limitation:

(i)      The Debtor within fourteen (14) calendar days after the Bankruptcy filing, file its Motion for Approval of procedures for the prompt sale of substantially all of the Debtor's assets.

(ii)      The Motion for Approval of Sales Procedures shall permit bids to be submitted for substantially all of the Debtor's assets. If approved, the Bidding Procedures will allow the Debtor to solicit and identify bids from potential buyers that constitute the highest or otherwise best offer for the Assets on a schedule consistent with the milestones detailed in the DIP Order, the Bidding Procedures' Order and the Debtor's Chapter 11 objectives.

(iii)      Due Diligence: The Debtor will provide any Potential Bidder such due diligence access or additional information as the Debtors, in consultation with the Independent Director, deems appropriate, which may include differentiations between the diligence provided to strategic and financial bidders, as appropriate, and contractual obligations to limit access to certain proprietary information.

(iv)      That the successful bidder agree to continue to conclusion certain of the Debtor's contracts with prepetition customers of the Debtor which contracts will be expressly assumed by the Debtor and assigned to the successful bidder.

(v)     In any sale of the Debtor's assets, Lender shall be entitled to bid toward the purchase price for the assets utilizing its secured claim as credit against its bid, including as permitted by Section 363(k) of the Bankruptcy Code.  Competing bidders will have to overbid Lender's bid by paying in cash an amount that is at least sufficient to pay Lender's postpetition secured claim in full in accordance with the approved Bidding Procedures.

(vi)     Any bidder must provide a deposit equal to three percent of the proposed purchase price that it offers to pay, except that Lender may rely upon its secured claim in lieu of having to post a cash deposit.

(vii)     Any bidder must deliver a bid package to the Debtor's counsel and the Independent Director which includes the required down-payment and a form of purchase and sale agreement that is acceptable to the Debtor and Independent Director and is in accordance with the version of the Asset Purchase Agreement that will be attached to the Debtor's Motion for Approval of sale of assets.

(viii)     Pursuant to the Bidding Procedures' Order, a date shall be set for the submission of qualified bids.  The Independent Director shall provide a report to the Court prior to the hearing which shall be scheduled by the Court, when convenient, and as close to May 20, 2021 as possible.  At the hearing on the sale before the Court, the Independent Director and Debtor's counsel shall conduct a sale where the bidders who have submitted qualified bids shall bid against each other until the highest and best bid is determined and the Court is able to make appropriate findings pursuant to Section 363 generally and Section 363(m) in particular.

(ix)     The bidder who finishes second in the bidding shall agree to be a back-up bidder in case the prevailing bidder fails to close.  The Seller shall hold on to the competing bidder's deposit; however, should a closing of the sale occur with the highest bidder, the second bidder's deposit shall be returned to them within three (3) business days after such closing.

(x)     Any other bidding procedures submitted by the Debtor for approval in its sales procedures' motion shall first be approved by Lender.

"Borrower's Books" means all of Borrower's books and records relating to its existence, governance, assets, liabilities or financial condition or any of the Collateral, including minute books; ledgers and records indicating, summarizing or evidencing Borrower's assets or liabilities; all information relating to Borrower's business operations; and all computer records, programs, discs or tape files, printouts, runs, and other information prepared or stored electronically, including the equipment or any website or third party storage provider containing or hosting such information.

"Carve-Out" has the meaning provided in the DIP Order.

"Carve-Out Amount" has the meaning provided in the DIP Order.

"Chapter 11 Case" has the meaning set forth in the recitals to this Agreement.

"Closing Date" means the date on which the initial Loan is funded hereunder.

"Collateral" means all of Borrower's assets and the proceeds of such assets, including property and interests in property described in this Agreement, all property described in any of the Security Documents as security for the payment or performance of any of the Obligations, and all other property and interests in property that now or hereafter secure (or are intended to secure) the payment or performance of any of the Obligations, but excluding any avoidance action claims that arise solely under the Bankruptcy Code.

"Committees" means, collectively, any official committee of unsecured creditors and any other committee formed, appointed, or approved in the Chapter 11 Case and each of such Committees shall be referred to herein as a "Committee".

"Default" means an event or condition the occurrence of which would, with the lapse of time or the giving of notice, or both, become an Event of Default.

"DIP Order" means the Interim Order or the Final Order, whichever is in effect as of the relevant date in question.

"Dollars" and the sign "$" means lawful money of the United States of America.

"Event of Default" means the occurrence of any one of the events set forth in Section 8.

"Fees" means all fees payable to Lender pursuant to this Agreement.

"Final Order" means the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing under Bankruptcy Rule 4001(c)(2) or such other procedures as approved by the Bankruptcy Court which order shall be satisfactory in form and substance to Lender, and from which no appeal or motion to reconsider has been timely filed, or if timely filed, such appeal or motion to reconsider has been dismissed or denied unless Lender waives such requirement), together with all extensions, modifications and amendments thereto, in form and substance satisfactory to Lender, which, among other matters but not by way of limitation, authorizes Borrower to obtain credit, incur (or guaranty) Indebtedness, and grant Liens under this Agreement and the other Loan Documents, as the case may be, and provides for the super priority of Lender's claims.

"Full Payment" means the full, final and indefeasible payment in full of all of the Obligations.

"GAAP" means generally accepted accounting principles in the United States of America in effect from time to time.

"Intellectual Property" means all intellectual and similar property of a Person, including inventions, designs, patents, copyrights, trademarks, service marks, trade names, trade secrets,

- 5 -

confidential or proprietary information, customer lists, know-how, software and databases; all embodiments or fixations thereof and all related documentation, applications, registrations and franchises; all licenses or other rights to use any of the foregoing; and all books and records relating to the foregoing.

"Interim Order" means the order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing (assuming satisfaction of the standards prescribed in Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001 and other applicable law), together with all extension, modifications, and amendments thereto, in form and substance satisfactory to Lender which, among other matters but not by way of limitation, authorizes, on an interim basis, Borrower to execute and perform under the Line of Credits of this Agreement and the other Loan Documents, substantially in the form attached as an exhibit to the DIP Financing Motion.

"Lien" means any interest in property securing an obligation owed to, or a claim by, a Person other than the owner of the property, whether such interest is based on common law, statute or contract.  The Line of Credit "Lien" shall also include reservations, exceptions, encroachments, easements, rights-of-way, covenants, conditions, restrictions, leases and other title exceptions and encumbrances affecting property.  For the purpose hereof, Borrower shall be deemed to be the owner of any property which it has acquired or holds subject to a conditional sale agreement or other arrangement pursuant to which title to the property has been retained by or vested in some other Person for security purposes.

"Line of Credit Loan"  means the loan to be made by Lender to Borrower pursuant to this Agreement.

"Line of Credit Note" means the promissory note to be executed by Borrower at Lender's request to evidence the Obligations under the Line of Credit Loan and in connection with this Agreement.

"Loan" means an advance of money made by Lender to Borrower pursuant to the Line of Credits of this Agreement.

"Loan Documents" means, collectively, this Agreement (including any Rider hereto), the DIP Order, the Note, and any other documents and agreements entered into between Lender and Borrower in connection with this Agreement or to evidence or govern the Line of Credits of any of the Obligations

"Local Bankruptcy Rules" means the local bankruptcy rules of the Bankruptcy Court as the same may from time to time be in effect and applicable to the Chapter 11 Case.

"Material Agreement" means any agreement, instrument or arrangement to which Borrower is a party for which default in the performance, observance or fulfillment of any of the material

obligations, covenants or conditions contained therein could reasonably be expected to have a Material Adverse Effect.

"Note" means a promissory note executed by Borrower at Lender's request to evidence any of the Obligations, including the Line of Credit Note.  A true and correct copy of the Note is attached hereto as Exhibit "3".

"Obligations" means all Debts, liabilities, obligations, covenants, and duties at any time or times owing by Borrower to Lender of any kind and description, whether incurred pursuant to or evidenced by any of the Loan Documents or pursuant to any other agreement between Lender and Borrower or otherwise, and whether direct or indirect, absolute or contingent, due or to become due, or joint or several, including the principal of and interest on the Loan.  Without limiting the generality of the foregoing, the Line of Credit "Obligations" shall include all Debts, liabilities and obligations incurred by Borrower to Lender in the Bankruptcy Case and any interest, fees or other charges accrued in the Bankruptcy Case, whether or not any such interest, fees or other charges are recoverable from Borrower or its estate under 11 U.S.C. §506.

"Obligor" means Borrower.

"Permitted Senior Lien" means any Prior Lien (as defined in the DIP Order), and valid, enforceable, and non-avoidable Lien that was perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which is senior in priority to the Prepetition Senior Liens under applicable law and after giving effect to any subordination or inter-creditor agreements.

"Petition Date" has the meaning set forth in the recitals to this Agreement.

"Postpetition" means the time period beginning immediately upon the filing of the Chapter 11 Case.

"Prepetition" means the time period ending immediately prior to the filing of the Chapter 11 Case.

"Prepetition Loan Documents" means the documents attached as Exhibits to this Agreement.

"Prepetition Indebtedness"  means the total indebtedness owed to it prior to bankruptcy for secured loans that it made to the Debtor.  The approximate amount of this loan was $580,000 in principal plus interest, costs and attorneys' fees incurred by Lender prior to the bankruptcy filing.

"Securecomm" means Securecomm. LLC.

- 7 -

0029

"Security Documents" means each instrument or agreement now or at any time hereafter securing or assuring payment of the whole or any part of the Obligations, including this Agreement.

"UCC" means the Uniform Commercial Code (or any successor statute) as adopted and in force in the State of Delaware from time to time or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code (or any successor statute) of such state.

1.2    **UCC Line of Credits**.  All other capitalized Line of Credits contained in this Agreement and not otherwise defined herein shall have, when the context so indicates, the meanings provided for by the UCC to the extent the same are used or defined therein.

1.3    **Super Priority Nature of Obligations**.

(a)    The priority of Lender's claims against, and Liens on and in the Collateral of, Borrower shall be as set forth in the DIP Order.

(b)    All Obligations shall constitute administrative expenses of Borrower in the Chapter 11 Case, with administrative priority and senior secured status under Sections 364(c) and 364(d) of the Bankruptcy Code.  Subject to the Carve-Out, such administrative claim shall have priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114 or any other provision of the Bankruptcy Code or otherwise, and shall at all times be senior to the rights of Borrower, Borrower's estate, and any successor trustee or estate representative in the Chapter 11 Case or any subsequent proceeding or case under the Bankruptcy Code.  The Liens granted to Lender on and in the Collateral of Borrower, and the priorities accorded to the Obligations, shall have the priority and senior secured status afforded by Sections 364(c) and 364(d)(l) of the Bankruptcy Code (all as more fully set forth in the DIP Order) senior to all claims and interests other than the Carve-Out and Permitted Senior Liens.

(c)    Lender's Liens on and in the Collateral of Borrower and Lender's administrative claims under Sections 364(c)(l) and 364(d) of the Bankruptcy Code afforded the Obligations shall also have priority over any claims arising under Section 506(c) of the Bankruptcy Code subject and subordinate only to the Carve-Out and Permitted Senior Liens.  Except as set forth herein or in the DIP Order, no other claim having a priority superior or pari passu to that granted to Lender by the DIP Order shall be granted or approved while any Obligations under this Agreement remain outstanding.  Except for the Carve-Out, no costs or expenses of administration shall be imposed against Lender or any of its Collateral under Sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, and Borrower hereby waives for itself and on behalf of its estate in bankruptcy, any and all rights under sections 105, 506(c) or 552, or otherwise, to assert or impose or seek to assert or impose, any such costs or expenses of administration against Lender.

1.4    **Payment of the Obligations**.  Upon the maturity (whether by acceleration or otherwise) of any of the Obligations under this Agreement or any of the other Loan Documents, Lender shall be entitled to immediate payment of such Obligations without further application to or order of the Bankruptcy Court.

1.5    **No Discharge; Survival of Claims**.  Borrower agrees that (a) the Obligations hereunder shall not be discharged by the entry of an order confirming a plan of reorganization in the Chapter 11 Case (and Borrower pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge on behalf of itself and its bankruptcy estate), and (ii) the superpriority administrative claim granted to Lender pursuant to the DIP Order and described in this Agreement and the Liens granted to Lender pursuant to the Interim Order and Final Order and described in this Agreement shall not be affected in any manner by the entry of an order confirming a plan of reorganization in the Chapter 11 Case.

1.6    **Waiver of Priming Rights**.  Upon the Closing Date, and on behalf of itself and its estate, and for so long as any Obligations shall be outstanding, without limiting any Line of Credits or conditions of the DIP Order, Borrower hereby irrevocably waives, on behalf of itself and its bankruptcy estate, any right, (a) to grant or impose, or request that the Bankruptcy Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, Liens on or security interests in any of the collateral securing the Obligations, which are pari passu with, equal to or superior to the Liens and security interests held by Lender, (b) to grant or impose, or request that the Bankruptcy Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, claims or expenses against Borrower, which are pari passu with, equal to or superior to the Obligations, and (c) to use, or to request that the Bankruptcy Court authorize the use of, Cash Collateral (as defined in the DIP Order) or proceeds of Loans, except for such consensual uses expressly provided under the DIP Order.

**SECTION 2.    LOAN AND LINE OF CREDITS OF REPAYMENT**

2.1    **Line of Credit Loan**.    Upon Court approval of this Agreement, Lender shall make available a Line of Credit Loan to Borrower in the sum of $1,770,000.  The Line of Credit Loan shall be first approved on an Interim basis and then approved on a Final basis pursuant to the approved Budget which will be an exhibit to the Debtor in Possession Financing Motion and which Budget's foundation and authentication shall be provided by Ms. Gina Lim, the Debtor's Interim Chief Financial Officer.  For the term of the Loan, and so long as the Debtor is not in Default, the Debtor may request, and Lender shall supply, weekly advances to the Debtor in an amount sufficient to allow the Debtor to pay all expenses for the following week in accordance with the Approved Budget and as otherwise permitted under this Agreement.  The Debtor shall make such requests in writing no less than __ days prior to the commencement of the next budget week or as the parties may otherwise agree in writing.

2.1.1    Application and Usage of Loan Proceeds: Upon Court approval of the Line of Credit Loan, Lender shall  immediately apply $580,000 of the loan proceeds to payment of Lender's Prepetition Indebtedness plus interest, costs and attorneys' fees.  The balance of the

loan proceeds, in the amount of $1,191,000 shall be available under the line of credit note for utilization pursuant to this Agreement and the Debtor in Possession Financing Order.

2.2     **Payments**.     All payments with respect to any of the Obligations shall be made to Lender on the date when due, in immediately available funds, without any offset or counterclaim.

2.3     **Interest Rate**.     Interest shall accrue on the Line of Credit Loan at the rate of 12.00% per annum. .   Upon an Event of Default under this Agreement, the interest rate shall increase to 18.00% per annum.  The Loan shall also be subject to an origination fee in the amount of 2% of the total loan advanced, which shall be due and payable per Section 3.1 of this Agreement.

2.4     **Fees and Reimbursement of Expenses**.   Borrower shall be obligated to pay all of Lender's reasonable fees and expenses, including attorneys' fees and costs, incurred in connection with this Agreement and the Line of Credit Loan.

2.5     **No Prepayment Penalty**.  Borrower shall have the right to prepay the Obligations under this Agreement in full at any time without the imposition of any prepayment fee or penalty.

**SECTION 3.     LINE OF CREDIT**

3.1     **Line of Credit**.   The Line of Credit Loan shall mature and be Payable in full at the earliest of: (1) the first business day that is 75 days after the Closing Date; (2) approval and closing of a sale of substantially all of the Borrower's assets under Section 363 of the Bankruptcy Code; (3) confirmation of a chapter 11 plan in this case; (4) conversion of the case to chapter 7; (5) dismissal of the case; or (6) appointment of a chapter 11 trustee in this case.

3.2     **Line of Credit**. At any time that an Event of Default exists, Lender may terminate this Agreement upon 5-days' notice to Borrower.

**SECTION 4.     CREATION OF SECURITY INTEREST**

4.1     **Grant of Security Interest**.  Without limitation of any of the provisions of the DIP Order, to secure the prompt payment and performance of all of the Obligations, Borrower hereby grants to Lender a continuing security interest in and Lien upon all personal property of Borrower, including all of the following property and interests in property of Borrower, whether now owned or existing or hereafter created, acquired or arising and wheresoever located: all Accounts; all Goods, including all Inventory and Equipment (including Fixtures); all Instruments; all Chattel Paper; all Documents (including bills of lading); all General Intangibles, including Intellectual Property, Payment Intangibles and Software; all Deposit Accounts; all Accessions to, substitutions for and replacements, Products and cash and non-cash Proceeds of any of the foregoing, including Proceeds of and unearned premiums with respect to insurance policies insuring any of the Collateral and claims against any Person for loss of, damage to or destruction of any of the Collateral; and all of Borrower's Books.

- 10 -

0032

4.2      **Perfection of Security Interest**.  Without limitation of any of the provisions of the DIP Order relating to the automatic perfection of Lender's Liens, promptly after Lender's request therefor, Borrower shall execute or cause to be executed and delivered to Lender such instruments, assignments, title certificates or other documents as are necessary under the UCC or other applicable law (including any motor vehicle certificate of title act) to perfect (or continue the perfection of) Lender's Liens upon the Collateral and shall take such other action as may be requested by Lender to give effect to or carry out the intent and purposes of this Agreement.  Unless prohibited by applicable law, Borrower hereby irrevocably authorizes Lender to execute and file in any jurisdiction any financing statement or amendment thereto on Borrower's behalf, including financing statements that indicate the Collateral (i) as all assets or all personal property of Borrower or words to similar effect or (ii) as being of equal or lesser scope, or with greater or lesser detail, than as set forth in this Agreement.  Borrower also hereby ratifies its authorization for Lender to have filed in any jurisdiction any like financing statement or amendment thereto if filed prior to the date hereof.

## SECTION 5.    CONDITIONS PRECEDENT

5.1      **Initial Conditions Precedent**.  Lender shall not be obligated to fund the Loan unless each of the following conditions has been satisfied:

(a)      Borrower has executed and delivered each such Loan Document, all in form and substance satisfactory to Lender.

(b)      The DIP Order shall be in full force and effect and shall not have been reversed, modified, amended, subject to a pending appeal, stayed or vacated (other than, as to the Interim Order, by the Final Order) absent the prior written consent of Lender.

## SECTION 6.    BORROWER'S REPRESENTATIONS AND WARRANTIES

6.1    **Administrative Priority; Lien Priority; DIP Order**.

(a)      The Obligations constitute an allowed administrative expense in the Chapter 11 Case, having priority in payment over all other administrative expenses and claims against Borrower now existing or hereafter arising, of any kind or nature whatsoever subject to the exceptions or Carve-Outs provided for in this Agreement, including without limitation all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code.

(b)      Pursuant to Section 364(c)(2) of the Bankruptcy Code and the DIP Order, all Obligations are secured by a perfected Lien on the Collateral, subject to no other Lien (except as provided in the DIP Order) in any of the Collateral which is not encumbered by a Prior Lien (as defined in the DIP Order).

- 11 -

0033

(c)      Pursuant to Section 364(d)(1) of the Bankruptcy Code and the DIP Order, all of the Obligations are secured by (1) a perfected Lien on the Collateral which came into existence or was acquired by Borrower on or after the Petition Date, subject to no other Lien except as provided in the DIP Order, and (2) a perfected Lien on the Collateral which came into existence or was acquired by Borrower prior to the Petition Date, subject to no other Lien except as provided in the DIP Order.

(d)      On the Closing Date, the Interim Order is, and from and after the entry of the Final Order, the Final Order will be, in full force and effect, and neither the Interim Order nor the Final Order has been reversed, vacated, modified, amended or stayed, except for modifications and amendments that are reasonably acceptable to Lender and are not stayed in any respect.

6.2      **Approved Budget**.  Borrower has furnished the Approved Budget to Lender.  The Approved Budget is reasonable and was prepared on a reasonable basis and in good faith by Borrower and is based on reasonable assumptions based on the best information available to Borrower, and Borrower is not aware of any facts or information that would lead any of them to believe that the Approved Budget is incorrect or misleading in any material respect.

6.3      **Appointment of Trustee or Examiner; Liquidation**.  No order has been entered or is pending in the Chapter 11 Case (a) for the appointment of a Chapter 11 trustee, (b) for the appointment of an examiner with enlarged powers (beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) under Sections 1104(d) and 1106(b) of the Bankruptcy Code or (c) to convert the Chapter 11 Case to a Chapter 7 case or to dismiss the Chapter 11 Case.

6.4      **Chapter 11 Case**.  The Chapter 11 Case was commenced by the filing of a voluntary petition on the Petition Date.  The Chapter 11 Case has not been dismissed.  The motion for approval of this Agreement was proper and sufficient pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules of the Bankruptcy Court.

## SECTION 7.    AFFIRMATIVE COVENANTS

At all times that this Agreement remains in effect the Line of Credit Loan is outstanding, Borrower covenants that it shall:

7.1      **Notices**.  Notify Lender, promptly after Borrower obtains knowledge thereof, of (i) any Default or Event of Default; (ii) the commencement of any action, suit or other proceeding against, or any demand for arbitration with respect to, Borrower; (iii) the occurrence or existence of any default (or claimed default) by Borrower relating to this Agreement or the Line of Credit Loan; or (iv) any other event or transaction which has or could reasonably be expected to have a Material Adverse Effect.

7.2      **Rights and Facilities**.  Maintain and preserve all rights (including all rights related to

- 12 -

Intellectual Property), franchises and other authority adequate for the conduct of its business; maintain its properties, equipment and facilities in good order and repair; conduct its business in an orderly manner without voluntary interruption; and maintain and preserve its existence.

7.3     **Insurance**.  In addition to the insurance required by the Loan Documents with respect to the Collateral, maintain with its current insurers or with other financially sound and reputable insurers having a rating of at least A- or better by *Best's Ratings*, a publication of A.M. Best Company, (i) insurance with respect to its properties and business against such casualties and contingencies of such type (including product liability, workers' compensation, larceny, embezzlement or other criminal misappropriation insurance) and in such amounts and with such coverages, limits and deductibles as is customary in the business of Borrower (ii) marine cargo coverage, in such amounts and with such coverages, limits and deductibles as is customary in the business of Borrower, and (iii) business interruption insurance, in an amount approved by Lender.

7.4     **Visits and Inspections**.  Permit representatives of Lender from time to time, as often as may be reasonably requested, but only during normal business hours and (except when a Default or Event of Default exists) upon reasonable prior notice to Borrower to: visit and inspect properties of Borrower; inspect, audit and make extracts from Borrower's books and records; and discuss with its officers, employees and independent accountants Borrower's financial conditions, business prospects and results of operations.

7.5     **Taxes; Other Charges**.  Pay and discharge all Taxes (and other charges the nonpayment of which could result in a Lien on Borrower's assets) in accordance with the requirements of the Bankruptcy Code to the extent permitted under the DIP Order, and, if requested by Lender, shall provide proof of payment or, in the case of withholding or other employee taxes, deposit of payments required by applicable law.  Borrower shall, and shall cause each of its Subsidiaries to, deliver to Lender copies of all Tax returns (and amendments thereto) promptly after the filing thereof.

7.6     **Financial Statements and Other Information**.  Keep adequate records and books of account with respect to its business activities in which proper entries are made in accordance with GAAP reflecting all its financial transactions

7.7     **Compliance with Laws**.  Comply with all laws relating to Borrower, the conducts of its business and the ownership and use of its Assets, including ERISA, all Environmental Laws, OSHA, the Fair Labor Standards Act and all other laws regarding the collection, payment and deposit of the Taxes, and shall obtain and keep in full force and effect any and all governmental and regulatory approvals necessary to the ownership of its properties or the conduct of its business and shall promptly report any non-compliance to Lender.

7.8     **Reimbursement for Lender Expenses**.  Upon the demand of Lender, promptly

reimburse Lender for all sums expended by Lender which constitute Lender Expenses, and Borrower hereby authorizes and approves all Loans by Lender in payment of items constituting Lender Expenses.

7.9    **Chapter 11 Pleadings**.  Promptly (and in any event within two days) after filing thereof, Borrower will deliver, or cause to be delivered, to Lender copies of any pleadings, motions, applications, financial information and other papers and documents filed by Borrower in the Chapter 11 Case, which papers and documents would not otherwise be served on Lender and Lender's counsel pursuant to the Bankruptcy Court's appropriate procedures.

## SECTION 8.    EVENTS OF DEFAULTS

8.1    **Events of Default**.  The occurrence or existence of any one or more of the following events or conditions shall constitute an Event of Default:

(a)    Borrower shall fail to pay any of the Obligations on the due date thereof (whether due at stated maturity, on demand, upon acceleration or otherwise);

(b)    Borrower fails or neglects to perform, keep or observe any Line of Credit, provision, condition, covenant or agreement, in this Agreement, in any of the other Loan Documents, or in any other present or future agreement between Borrower and Lender;

(c)    Borrower is enjoined, restrained or in any way prevented by court order from continuing to conduct all or any material part of its business affairs or Borrower voluntarily ceases to continue to conduct all or any material part of its business;

(d)    A Bankruptcy Default shall occur; or

(e)    Borrower shall fail to reach or achieve any of the Bankruptcy Milestones.

8.2    **Cumulative Rights; No Waiver**.  All covenants, conditions, warranties, guaranties, indemnities and other undertakings of Borrower in the DIP Order, this Agreement or any of the other Loan Documents shall be deemed cumulative, and Lender shall have all other rights and remedies not inconsistent herewith as provided under the UCC or other applicable law.  No exercise by Lender of one right or remedy shall be deemed an election, and no waiver by Lender of any Default or Event of Default on one occasion shall be deemed to be a continuing waiver or applicable to any other occasion.  No waiver or course of dealing shall be established by the failure or delay of Lender to require strict performance by Borrower with any Line of Credit of the Loan Documents, or to exercise any rights or remedies with respect to the Collateral or otherwise.

**SECTION 9.    GENERAL PROVISIONS**

9.1    **Effectiveness, Successors and Assigns.**  This Agreement shall be binding and deemed effective when executed by Borrower and accepted by Lender, and when so accepted, shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided that Borrower may not assign this Agreement or any rights hereunder without Lender's prior written consent, and any prohibited assignment shall be absolutely void. No consent to an assignment by Lender shall release Borrower from its Obligations to Lender. Lender may assign this Agreement and its rights and duties hereunder. Lender reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Lender's rights and benefits hereunder.

9.2    **Section Headings; Interpretation**.  Section headings and section numbers have been set forth herein for convenience only.  Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Lender or Borrower, whether under any rule of construction or otherwise.  This Agreement has been reviewed by all parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the parties hereto.

9.3    **Indulgences Not Waivers**.  Lender's failure at any time or times to require strict performance by Borrower of any provision of this Agreement or any of the other Loan Documents shall not waive, affect or otherwise diminish any right of Lender thereafter to demand strict compliance and to performance with such provision.

9.4    **Severability; Survival.**  Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of delimiting the legal enforceability of any specific provision.

9.5    **Modification; Entire Agreement.**  This Agreement cannot be changed or limited orally. This Agreement and the other Loan Documents represent the entire understanding of the parties with respect to the subject matter hereof and thereof and supersede all prior agreements, understandings, negotiations and inducements regarding the same subject matter.

9.6    **Counterparts; Facsimile Signatures**.  This Agreement and any amendments hereto may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument. Counterparts of each of the Loan Documents may be delivered by facsimile or electronic mail and the effectiveness of each such Loan Document and signatures thereon shall, subject to applicable law, have the same force and effect as manually signed originals and shall be binding on all parties thereto.

0037

9.7    **Governing Law.**  This Agreement shall be deemed to have been made in the State of Colorado, and shall be governed by and construed in accordance with the internal laws (without regard to conflict of law provisions) of the State of Colorado.

9.8    **Consent to Forum.**  Borrower and Lender consent to the exclusive jurisdiction of the Bankruptcy Court in any action, suit or other proceeding arising out of or relating to this Agreement or any of the other Loan Documents.  Subject to the Line of Credits of the DIP Order, nothing herein shall limit the right of Lender to bring proceedings against Borrower in the courts of any other jurisdiction where Collateral may be located.  Nothing in this Agreement shall be deemed or operate to affect the right of Lender to serve legal process in any other manner permitted by law or to preclude the enforcement by Lender of any judgment or order obtained in such forum or the taking of any action under this Agreement to enforce same in any other appropriate forum or jurisdiction.

9.9    **Waiver of Certain Rights.**

(A)    **GENERAL.**    TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY KNOWINGLY, INTENTIONALLY AND INTELLIGENTLY WAIVES (WITH THE BENEFIT OF ADVICE OF LEGAL COUNSEL OF ITS OWN CHOOSING): (I) THE RIGHT TO TRIAL BY JURY (WHICH LENDER HEREBY ALSO WAIVES) IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF, RELATED TO OR BASED IN ANY WAY UPON ANY OF THE LOAN DOCUMENTS, THE OBLIGATIONS OR THE COLLATERAL; (II) SUBJECT TO THE LINE OF CREDITS OF THE DIP ORDER, PRESENTMENT, PROTEST, DEFAULT, NON-PAYMENT, MATURITY, RELEASE, COMPROMISE, SETTLEMENT, EXTENSION OR RENEWAL OF ANY OR ALL COMMERCIAL PAPER, ACCOUNTS, CONTRACT RIGHTS, DOCUMENTS, INSTRUMENTS, CHATTEL PAPER AND GUARANTIES AT ANY TIME HELD BY LENDER ON WHICH BORROWER MAY IN ANY WAY BE LIABLE AND HEREBY RATIFIES AND CONFIRMS WHATEVER LENDER MAY DO IN THIS REGARD; (III) SUBJECT TO THE LINE OF CREDITS OF THE DIP ORDER, NOTICE PRIOR TO TAKING POSSESSION OR CONTROL OF ANY OF THE COLLATERAL AND THE REQUIREMENT TO DEPOSIT OR POST ANY BOND OR OTHER SECURITY WHICH MIGHT OTHERWISE BE REQUIRED BY ANY COURT OR APPLICABLE LAW PRIOR TO ALLOWING LENDER TO EXERCISE ANY OF LENDER'S SELF-HELP OR JUDICIAL REMEDIES TO OBTAIN POSSESSION OF ANY OF THE COLLATERAL; (IV) THE BENEFIT OF ALL VALUATION, APPRAISEMENT AND EXEMPTION LAW; (V) ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY, FOR SPECIAL, INDIRECT, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES (AS OPPOSED TO DIRECT OR ACTUAL DAMAGES) ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF ANY OF THE LOAN DOCUMENTS, ANY TRANSACTION THEREUNDER, THE ENFORCEMENT OF ANY REMEDIES BY LENDER OR THE USE OF ANY PROCEEDS OF ANY LOANS; (VI) NOTICE OF ACCEPTANCE OF THIS AGREEMENT BY LENDER; AND (VII) THE RIGHT TO ASSERT ANY CONFIDENTIAL RELATIONSHIP THAT IT MAY HAVE UNDER APPLICABLE LAW WITH ANY ACCOUNTING FIRM AND/OR SERVICE BUREAU IN CONNECTION WITH ANY INFORMATION REQUESTED BY LENDER PURSUANT TO OR IN ACCORDANCE WITH THIS AGREEMENT (AND BORROWER AGREES THAT LENDER MAY CONTACT DIRECTLY ANY SUCH

0038

**ACCOUNTING FIRM AND/OR SERVICE BUREAU IN ORDER TO OBTAIN ANY SUCH INFORMATION).**

9.10   **Additional Provisions.**  Time is of the essence of this Agreement and the other Loan Documents.  No provision of this Agreement or any of the other Loan Documents shall be construed against or interpreted to the disadvantage of any party hereto by any governmental authority by reason of such party having or being deemed to have structured, drafted or dictated such provision.

9.11   **Lender as Party-in-Interest.**  Borrower hereby stipulates and agrees that Lender is and shall remain a party in interest in the Chapter 11 Case and shall have the right to participate, object and be heard in any motion or proceeding in connection therewith.  Nothing in this Agreement or any other Loan Document shall be deemed to be a waiver of any of Lender's rights or remedies under applicable law or documentation.  Without limitation of the foregoing, Lender shall have the right to make any motion or raise any objection it deems to be in its interest.

9.12.   **Credit Bids**.   Lender has the right to credit bid its claims under this Agreement or the DIP Order, as applicable, pursuant to Section 363(k) of the Bankruptcy Code, and Borrower agrees that it shall not object to Lender's right to credit bid.

9.13.   **Conflict of Other Agreements**.   If any provision in this Agreement or any other Loan Document conflicts with any provision in the DIP Order, the provision in the DIP Order shall govern and control.

[Rest of Page is Blank, Continued on Next Page]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, to be effective on the date first set forth above.

BORROWER:

**collab9, LLC, a Delaware Limited Liability Company**


By: _____
Name:  Kevin Schatzle
Title:  Chief Executive Officer


LENDER:
Securecomm. LLC


By: _____
Name: _____

18

# EXHIBIT 1

# PROMISSORY NOTE
# &
# SECURITY AGREEMENT

**$300,000.00**                                           **February 4, 2021**

FOR VALUE RECEIVED, the receipt of which is hereby acknowledged, collab9, LLC, a Delaware limited liability company with its principal assets and business operations located at 1881 9th Street, Suite 125, Boulder, Colorado 80302 ("Debtor"), hereby promises to pay to the order of Dollab LLC, a Washington limited liability company ("Creditor") the principal sum of $300,000.00 (the "Loan"), in lawful money of the United States of America, in the manner and on the terms and conditions set forth below. Debtor and Creditor are sometimes referred to collectively as the "Parties."

This Promissory Note & Security Agreement (the "Note") represents the entire agreement between Debtor and Creditor of any kind, whether written or oral, with respect to the Loan and is entered into with respect to the following facts and recitals:

A.      Debtor requires immediate funding to pay its ordinary operating expenses and certain professional fees and other expenses associated with anticipated litigation and a chapter 11 bankruptcy filing and has been unable to procure such funding from other sources. In order to preserve Debtor's going concern value, Creditor has agreed to loan the funds evidenced by this Note on a senior secured basis and subject to the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the foregoing facts and recitals and of the mutual promises and consideration set forth herein, the Parties agree that the Loan shall be repaid according to the following terms:

1.      <u>Maturity Date</u>. Debtor shall repay the principal amount outstanding under this Note in full, together with all accrued and unpaid interest and fees then due, on or before August 1, 2021 (the "Maturity Date").

2.      <u>Interest & Fees</u>. The Loan shall accrue interest at the rate of 12.00% per year from the date of Indebtedness, or at 18.00% per year from the date of the occurrence of an Event of Default that remains uncured (the "Interest Rate"). The Interest Rate shall be compounded on a monthly basis, based on a 360-day year. The Loan shall also be subject to an origination fee in the amount of 2.00% of the Loan amount, which shall be due and payable on or before the Maturity Date. Notwithstanding the foregoing, the Interest Rate and fees shall not exceed the maximum rate permissible under any applicable laws governing this Note and, to the extent necessary to comply with such laws, shall be automatically reduced to the maximum allowable rate.

12456745

3.    _Amortization and Payment_.  So long as this Note is not in default, no payments shall be required before the Maturity Date.

4.    _Prepayment_.  Debtor shall have the right to prepay any of its obligations under this Note, in whole or in part, at any time or from time to time, without penalty.

5.    _Place and Manner of Payment_. All payments to Creditor under this Note shall be made at the offices of Creditor at the address set forth in Section 8 below, or at such other address as may be designated by Creditor in writing.

6.    _Security Interest_.  To secure the payment and performance of the Loan and all of Debtor's obligations under this Note, Debtor hereby grants to Creditor a security interest in all of Debtor's assets including, without limitation, all of Debtor's interests, of whatever kind, in any personal property, real property, equipment, fixtures, inventory, accounts, accounts receivable, chattel paper, documents, instruments, investment property, general intangibles, cash, letter of credit rights, refunds, deposit accounts, and intellectual property, together with all proceeds and products of the foregoing and all accessions to, substitutions and replacement for, and rents and profits of each of the foregoing (the "Security Interest").  Debtor authorizes Creditor to file a UCC-1 Financing Statement or similar such document with the Secretary of State for any state or any other federal, state, county, or local agency or office or take such other steps reasonably necessary to perfect its security interest granted under this paragraph.

7.    _Events of Default_.  The occurrence of any one or more of the following events shall constitute an "Event of Default":

a.    Debtor shall fail to pay any portion of the outstanding principal, interest or fees due under this Note on the Maturity Date;

b.    Debtor shall fail or neglect to perform or observe any other term, covenant, warranty or representation contained in this Note;

c.    the liquidation, dissolution, sale, lease, exchange or other disposition of all or substantially all of Debtor's assets;

d.    any assets of Debtor shall be attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors and the same is not cured within 30 days thereafter;

e.    an application shall be made by Debtor or any third party for the appointment of a receiver, trustee or custodian for any of Debtor's assets and in the case of an application made by a third party, the same is not dismissed within 30 days after the application therefor;

f.    a petition under any bankruptcy, insolvency or similar law shall be filed by or against Debtor, and in the case of any petition filed by any third party,

2

such petition is not dismissed within 60 days of such filing, or Debtor shall make an assignment for the benefit of its creditors or any case or proceeding shall be filed by or against Debtor for its dissolution, liquidation, or termination;

8.    <u>Remedies Upon Default</u>.  If an Event of Default shall have occurred and be continuing, Creditor may at its option:

a.    without presentment, demand, notice, protest or legal process of any kind, declare all of the outstanding principal and interest and any other obligations due under this Note immediately due and payable; and

b.    exercise any other remedy specifically granted under this Note or now or hereafter existing in equity, at law, by virtue of statute (including, without limitation, the Uniform Commercial Code).

9.    <u>Notices</u>.  All notices and communications relating to this Note shall be in writing and shall be deemed to be duly given, (a) after 3 days, if sent by first-class U.S. mail, (b) after 1 day, if sent by FedEx or other reputable overnight carrier, (c) immediately, if by confirmed e-mail or by personal delivery, in each case at the addresses set forth below or at such other address as any party shall have furnished to the other parties in writing:

If to Debtor:    collab9, LLC
Attn: Kevin Schatzle, CEO
21515 Hawthorne Blvd., Suite 200
Torrance, CA 90503
Tel: (424) 286-2333
e-mail: kschatzle@collab9.com

with a copy to:    SulmeyerKupetz
Attn: Victor A. Sahn
333 S. Grand Ave., Suite 3400
Los Angeles, CA 90071
Tel: (213) 626-2311
e-mail: vsahn@sulmeyerlaw.com

If to Creditor:    Dollab, LLC
Attn: Michael W. Chase
10655 NE 4th Street, Suite 700
Bellevue, WA 98004
Tel: (425) 505-2503
e-mail: mike.chase@fanagroup.com

with a copy to:    Lesnick Prince & Pappas LLP
Attn: Matthew A. Lesnick
315 W. Ninth St., Suite 705

3

Los Angeles, CA 90015
Tel: (310) 396-0964
e-mail: matt@lesnickprince.com

10.    Affirmative Covenants.

a.    Existence. Debtor shall maintain its existence.

b.    Conduct of Business. Debtor shall conduct its business only in the ordinary course and consistent with past practice and in compliance with applicable laws.

c.    Notice. Upon the occurrence of an Event of Default, Debtor shall immediately but in any event within 5 days provide notice and reasonably detailed description of such Event of Default to Creditor.

11.    Negative Covenants. Debtor shall not, without the prior written consent of Creditor:

a.    Merger or Consolidation. Merge with, or consolidate into, any other entity (other than a merger of a wholly-owned subsidiary of Debtor into Debtor), unless all principal and accrued and unpaid interest through the closing date on this Note is paid in full at the closing of such transaction.

b.    Disposition of Assets. Sell, transfer or otherwise dispose of any assets of the company or any of its subsidiaries outside of the ordinary course of business, other than sales, whether in a single transaction or a series of related transactions, for aggregate consideration of $100,000 or less for all such transactions in any 12-month period, unless this Note is paid in full at the closing of such transaction or transactions.

c.    Incurrence of Indebtedness. Incur any indebtedness that is not expressly subordinated in right to payment of all obligations of Debtor to Creditor pursuant to terms and conditions that are satisfactory to Creditor, in its sole discretion, provided that the restrictions contained in this paragraph shall not apply to (i) unsecured indebtedness to any third party, (ii) indebtedness to finance the purchase of equipment by Debtor, secured by purchase money liens on such equipment, not to exceed $100,000 in the aggregate at any time or from time to time, or (iii) performance bonds issued by Debtor in the ordinary course of its business, without taking into account the monetary obligation underlying any such bond.

d.    Liens. Cause, suffer or permit any of the assets of Debtor to become subject to any lien, other than purchase money liens on equipment acquired or held by Debtor for no more than $100,000 in the aggregate at any time or from time to time.

4

e.     Use of Loan Proceeds.  Debtor shall use any of the proceeds of the Loan other than for (i) ordinary business expenses of Debtor, or (ii) payment of professional fees in an amount and manner approved in advance by Creditor.

12.     Waiver of Presentment, Etc.     Debtor hereby expressly waives presentment for payment, demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment, and all lack of diligence or delays in collection or enforcement of this Note. In any action on this Note, Holder or its assignee need not produce or file the original of this Note, but need only file a photocopy of this Note certified by Holder or such assignee to be a true and correct copy of this Note in all material respects.

13.     Expenses.  Debtor agrees to reimburse Creditor for any out-of-pocket costs or expenses, including but not limited to attorneys' fees, reasonably incurred in connection with collection or enforcement by Creditor of any of its rights under this Note, whether suit be brought or not.

14.     Miscellaneous.

a.     Governing Law.  This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado that apply to contracts made and performed entirely in such state, without regard to principles of conflicts of laws which would direct the application of another jurisdiction's laws.

b.     Headings.  The Section and other headings contained in this Note are inserted for convenience of reference only and will not affect the meaning or interpretation of this Note.

c.     Amendments and Waivers.  This Note may not be modified or amended except by an instrument or instruments in writing signed by Creditor and Debtor.  Creditor may, only by an instrument in writing, waive compliance by Debtor with any term or provision hereof on the part of Debtor to be performed or complied with.  No failure or delay of Creditor in exercising any right or remedy hereunder shall operate as a waiver thereof, nor will any single or partial exercise of any right or power, or any abandonment or discontinuance of steps to enforce such right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The waiver by Creditor of a breach of any term or provision hereof shall not be construed as a waiver of any subsequent breach. The rights and remedies of Creditor are cumulative and are not exclusive of any rights or remedies that it would otherwise have.

d.     Absence of Presumption.  With regard to each and every term and condition of this Note, Debtor understands and agrees that the same has been mutually negotiated, prepared and drafted, and if at any time Debtor or Creditor is required to interpret or construe any such term or condition, no consideration

5

will be given to the issue of whether Debtor or Creditor actually prepared, drafted or requested any term or condition of this Note.

    e.    <u>Assignment.</u>  This Note may not be assigned by Debtor without the consent of the Creditor.  This Note may be assigned by Creditor at any time without the consent of Debtor, provided that Debtor shall have received 5 days' notice prior to such assignment.

    f.    <u>Setoff, Counterclaims, Etc.</u>  In any action,  suit or proceeding in respect of or arising out of this note, payor waives (a) the right to interpose any set-off or counterclaim of any  nature  or  description, (b) any objection based on forum non conveniens or venue, and (c) any claim for consequential, punitive or special damages.

**DEBTOR**

**COLLAB9, LLC**

By: _Kevin Schatzle_
Name: _Kevin Schatzle_
Its: _CEO_

Date: _2|4|21_

**CREDITOR**

**DOLLAB, LLC**

Ahrens DeAngeli Law Group LLP
By: _Stephen L. Pruss, Partner_
Name: _Ahrens DeAngeli Law Group, LLC by Stephen L. Pruss,_
Its: _Manager_ _Partner_

Date: _2/11/2021_

6

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
CSC 1-800-858-5294

**B. E-MAIL CONTACT AT FILER** (optional)
SPRFILING@CSCGLOBAL.COM

**C. SEND ACKNOWLEDGMENT TO:**  (Name and Address)

CORPORATION SERVICE COMPANY

SPRINGFIELD, IL 62703

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:32 PM 02/04/2021**
**U.C.C. Initial Filing No: 2021 0951633**

**Service Request No:  20210340576**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:**  Provide only *one* Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COLLAB9, LLC | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 21515 HAWTHORNE BOULEVARD, SUITE 200 | TORRANCE | CA | 90503 | US |

2. **DEBTOR'S NAME:**  Provide only *one* Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only *one* Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DOLLAB, LLC | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 701 5TH AVENUE, SUITE 1220 | SEATTLE | WA | 98104 | US |

4. **COLLATERAL:**  This financing statement covers the following collateral:

**All of Debtor's assets including, without limitation, all of Debtor's interests, of whatever kind, in any personal property, real property, equipment, fixtures, inventory, accounts, accounts receivable, chattel paper, documents, instruments, investment property, general intangibles, cash, letter of credit rights, refunds, deposit accounts, and intellectual property, together with all proceeds and products of the foregoing and all accessions to, substitutions or replacement for, and rents and profits of each of the foregoing.**

5. Check *only* if applicable and check *only* one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check *only* if applicable and check *only* one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check *only* if applicable and check *only* one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
649014-1

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# EXHIBIT 2

## PROMISSORY NOTE &
## SECURITY AGREEMENT
## [SECURECOMM Note No. 1]

**$380,000.00**                                                **March 12, 2021**

      FOR VALUE RECEIVED, the receipt of which is hereby acknowledged, collab9, LLC, a Delaware limited liability company with its principal assets and business operations located at 1881 9th Street, Suite 125, Boulder, Colorado 80302 ("Debtor"), hereby promises to pay to the order of Securecomm. LLC, a Washington limited liability company ("Creditor") the principal sum of $380,000.00 (the "Loan"), in lawful money of the United States of America, in the manner and on the terms and conditions set forth below.  Debtor and Creditor are sometimes referred to collectively as the "Parties."

      This Promissory Note & Security Agreement (the "Note") represents the entire agreement between Debtor and Creditor of any kind, whether written or oral, with respect to the Loan and is entered into with respect to the following facts and recitals:

      A.    Debtor requires immediate funding to pay its ordinary operating expenses and certain professional fees and other expenses associated with anticipated litigation and a chapter 11 bankruptcy filing and has been unable to procure such funding from other sources.  In order to preserve Debtor's going concern value, Creditor has agreed to loan the funds evidenced by this Note on a senior secured basis and subject to the terms and conditions set forth below.

      NOW, THEREFORE, in consideration of the foregoing facts and recitals and of the mutual promises and consideration set forth herein, the Parties agree that the Loan shall be repaid according to the following terms:

      1.    <u>Maturity Date</u>.  Debtor shall repay the principal amount outstanding under this Note in full, together with all accrued and unpaid interest and fees then due, on or before August 1, 2021 (the "Maturity Date").

      2.    <u>Interest & Fees</u>.  The Loan shall accrue interest at the rate of 12.00% per year from the date of indebtedness, or at 18.00% per year from the date of the occurrence of an Event of Default that remains uncured (the "Interest Rate").  The Interest Rate shall be compounded on a monthly basis, based on a 360-day year.  The Loan shall also be subject to an origination fee in the amount of 2.00% of the Loan amount, which shall be due and payable on or before the Maturity Date. Notwithstanding the foregoing, the Interest Rate and fees shall not exceed the maximum rate permissible under any applicable laws governing this Note and, to the extent necessary to comply with such laws, shall be automatically reduced to the maximum allowable rate.

3.    <u>Amortization and Payment</u>.  So long as this Note is not in default, no payments shall be required before the Maturity Date.

4.    <u>Prepayment</u>.  Debtor shall have the right to prepay any of its obligations under this Note, in whole or in part, at any time or from time to time, without penalty.

5.    <u>Place and Manner of Payment</u>. All payments to Creditor under this Note shall be made at the offices of Creditor at the address set forth in Section 8 below, or at such other address as may be designated by Creditor in writing.

6.    <u>Security Interest</u>.  To secure the payment and performance of the Loan and all of Debtor's obligations under this Note, Debtor hereby grants to Creditor a security interest in all of Debtor's assets including, without limitation, all of Debtor's interests, of whatever kind, in any personal property, real property, equipment, fixtures, inventory, accounts, accounts receivable, chattel paper, documents, instruments, investment property, general intangibles, cash, letter of credit rights, refunds, deposit accounts, and intellectual property, together with all proceeds and products of the foregoing and all accessions to, substitutions and replacement for, and rents and profits of each of the foregoing (the "Security Interest").  Debtor authorizes Creditor to file a UCC-1 Financing Statement or similar such document with the Secretary of State for any state or any other federal, state, county, or local agency or office or take such other steps reasonably necessary to perfect its security interest granted under this paragraph.

7.    <u>Events of Default</u>.  The occurrence of any one or more of the following events shall constitute an "Event of Default":

a.    Debtor shall fail to pay any portion of the outstanding principal, Interest or fees due under this Note on the Maturity Date;

b.    Debtor shall fail or neglect to perform or observe any other term, covenant, warranty or representation contained in this Note;

c.    the liquidation, dissolution, sale, lease, exchange or other disposition of all or substantially all of Debtor's assets;

d.    any assets of Debtor shall be attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors and the same is not cured within 30 days thereafter;

e.    an application shall be made by Debtor or any third party for the appointment of a receiver, trustee or custodian for any of Debtor's assets and in the case of an application made by a third party, the same is not dismissed within 30 days after the application therefor;

f.    a petition under any bankruptcy, insolvency or similar law shall be filed by or against Debtor, and in the case of any petition filed by any third party, such petition is not dismissed within 60 days of such filing, or Debtor shall make

0051

an assignment for the benefit of its creditors or any case or proceeding shall be filed by or against Debtor for its dissolution, liquidation, or termination;

8.    <u>Remedies Upon Default</u>.  If an Event of Default shall have occurred and be continuing, Creditor may at its option:

a.    without presentment, demand, notice, protest or legal process of any kind, declare all of the outstanding principal and Interest and any other obligations due under this Note immediately due and payable; and

b.    exercise any other remedy specifically granted under this Note or now or hereafter existing in equity, at law, by virtue of statute (including, without limitation, the Uniform Commercial Code).

9.    <u>Notices</u>.  All notices and communications relating to this Note shall be in writing and shall be deemed to be duly given, (a) after 3 days, if sent by first-class U.S. mail, (b) after 1 day, if sent by FedEx or other reputable overnight carrier, (c) immediately, if by confirmed e-mail or by personal delivery, in each case at the addresses set forth below or at such other address as any party shall have furnished to the other parties in writing:

If to Debtor:    collab9, LLC
Attn: Kevin Schatzle, CEO
21515 Hawthorne Blvd., Suite 200
Torrance, CA 90503
Tel: (424) 286-2333
e-mail: kschatzle@collab9.com

with a copy to:    SulmeyerKupetz
Attn: Victor A. Sahn
333 S. Grand Ave., Suite 3400
Los Angeles, CA 90071
Tel: (213) 626-2311
e-mail: vsahn@sulmeyerlaw.com

If to Creditor:    Securecomm. LLC
Attn: Michael W. Chase
10655 NE 4th Street, Suite 700
Bellevue, WA 98004
Tel: (206) 227-8836
e-mail: mike.chase@fanagroup.com

with a copy to:  Lesnick Prince & Pappas LLP
Attn: Matthew A. Lesnick
315 W. Ninth St., Suite 705
Los Angeles, CA 90015
Tel: (310) 396-0964
e-mail: matt@lesnickprince.com

10.  <u>Affirmative Covenants</u>.

a.  <u>Existence</u>.  Debtor shall maintain its existence.

b.  <u>Conduct of Business</u>.  Debtor shall conduct its business only in the ordinary course and consistent with past practice and in compliance with applicable laws.

c.  <u>Notice</u>.  Upon the occurrence of an Event of Default, Debtor shall immediately but in any event within 5 days provide notice and reasonably detailed description of such Event of Default to Creditor.

11.  <u>Negative Covenants</u>.  Debtor shall not, without the prior written consent of Creditor:

a.  <u>Merger or Consolidation</u>.  Merge with, or consolidate into, any other entity (other than a merger of a wholly-owned subsidiary of Debtor into Debtor), unless all principal and accrued and unpaid interest through the closing date on this Note is paid in full at the closing of such transaction.

b.  <u>Disposition of Assets</u>.  Sell, transfer or otherwise dispose of any assets of the company or any of its subsidiaries outside of the ordinary course of business, other than sales, whether in a single transaction or a series of related transactions, for aggregate consideration of $100,000 or less for all such transactions in any 12-month period, unless this Note is paid in full at the closing of such transaction or transactions.

c.  <u>Incurrence of Indebtedness</u>.  Incur any indebtedness that is not expressly subordinated in right to payment of all obligations of Debtor to Creditor pursuant to terms and conditions that are satisfactory to Creditor, in its sole discretion, provided that the restrictions contained in this paragraph shall not apply to (i) unsecured indebtedness to any third party, (ii) indebtedness to finance the purchase of equipment by Debtor, secured by purchase money liens on such equipment, not to exceed $100,000 in the aggregate at any time or from time to time, or (iii) performance bonds issued by Debtor in the ordinary course of its business, without taking into account the monetary obligation underlying any such bond.

d.  <u>Liens</u>.  Cause, suffer or permit any of the assets of Debtor to become subject to any lien, other than purchase money liens on equipment

4

acquired or held by Debtor for no more than $100,000 in the aggregate at any time or from time to time.

     e.    Use of Loan Proceeds.  Debtor shall use any of the proceeds of the Loan other than for (i) ordinary business expenses of Debtor, or (ii) payment of professional fees in an amount and manner approved in advance by Creditor.

    12.    Waiver of Presentment, Etc.    Debtor hereby expressly waives presentment for payment, demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment, and all lack of diligence or delays in collection or enforcement of this Note. In any action on this Note, Holder or its assignee need not produce or file the original of this Note, but need only file a photocopy of this Note certified by Holder or such assignee to be a true and correct copy of this Note in all material respects.

    13.    Expenses.  Debtor agrees to reimburse Creditor for any out-of-pocket costs or expenses, including but not limited to attorneys' fees, reasonably incurred in connection with collection or enforcement by Creditor of any of its rights under this Note, whether suit be brought or not.

    14.    Miscellaneous.

    a.    Governing Law.  This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado that apply to contracts made and performed entirely in such state, without regard to principles of conflicts of laws which would direct the application of another jurisdiction's laws.

    b.    Headings.  The Section and other headings contained in this Note are inserted for convenience of reference only and will not affect the meaning or interpretation of this Note.

    c.    Amendments and Waivers.   This Note may not be modified or amended except by an instrument or instruments in writing signed by Creditor and Debtor.  Creditor may, only by an instrument in writing, waive compliance by Debtor with any term or provision hereof on the part of Debtor to be performed or complied with.  No failure or delay of Creditor in exercising any right or remedy hereunder shall operate as a waiver thereof, nor will any single or partial exercise of any right or power, or any abandonment or discontinuance of steps to enforce such right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The waiver by Creditor of a breach of any term or provision hereof shall not be construed as a waiver of any subsequent breach. The rights and remedies of Creditor are cumulative and are not exclusive of any rights or remedies that it would otherwise have.

    d.    Absence of Presumption.  With regard to each and every term and condition of this Note, Debtor understands and agrees that the same has been mutually negotiated, prepared and drafted, and if at any time Debtor or Creditor

5

is required to interpret or construe any such term or condition, no consideration will be given to the issue of whether Debtor or Creditor actually prepared, drafted or requested any term or condition of this Note.

     e.     <u>Assignment.</u>  This Note may not be assigned by Debtor without the consent of the Creditor.  This Note may be assigned by Creditor at any time without the consent of Debtor, provided that Debtor shall have received 5 days' notice prior to such assignment.

     f.     <u>Setoff, Counterclaims, Etc.</u>  In any action, suit or proceeding in respect of or arising out of this note, payor waives (a) the right to interpose any set-off or counterclaim of any nature or description, (b) any objection based on forum non conveniens or venue, and (c) any claim for consequential, punitive or special damages.

**DEBTOR**                            **CREDITOR**

**COLLAB9, LLC**                   **SECURECOMM. LLC**

By: _____     By: _____
Name: Kevin Schatzle                 Name: Firoz Lalji
Its: CEO                         Its: Manager

0055

without the consent of Debtor, provided that Debtor shall have received 5 days' notice prior to such assignment.

      f.    <u>Setoff, Counterclaims, Etc.</u>  In any action, suit or proceeding in respect of or arising out of this note, payor waives (a) the right to interpose any set-off or counterclaim of any nature or description, (b) any objection based on forum non conveniens or venue, and (c) any claim for consequential, punitive or special damages.

**DEBTOR**

**COLLAB9, LLC**

By: _____
Name: Kevin Schatzle
Its: CEO

**CREDITOR**

**SECURECOMM, LLC**

By: _____
Name: Firoz Lalji
Its: Manager

6

0056

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
CSC 1-800-858-5294

**B. E-MAIL CONTACT AT FILER** (optional)
SPRFILING@CSCGLOBAL.COM

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

CORPORATION SERVICE COMPANY

SPRINGFIELD, IL 62703

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 06:12 PM 03/09/2021**
**U.C.C. Initial Filing No: 2021 1881938**

**Service Request No:  20210851272**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME **COLLAB9, LLC** | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS **21515 HAWTHORNE BOULEVARD, SUITE 200** | CITY **TORRANCE** | STATE **CA** | POSTAL CODE **90503** | COUNTRY **US** |

2. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME **SECURECOMM, LLC** | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS **ATTN: MICHAEL W. CHASE, 10655 NE 4TH ST., STE. 700** | CITY **BELLEVUE** | STATE **WA** | POSTAL CODE **98004** | COUNTRY **US** |

4. **COLLATERAL:** This financing statement covers the following collateral:
**All of Debtor's assets including, without limitation, all of Debtor's interests, of whatever kind, in any personal property, real property, equipment, fixtures, inventory, accounts, accounts receivable, chattel paper, documents, instruments, investment property, general intangibles, cash, letter of credit rights, refunds, deposit accounts, and intellectual property, together with all proceeds and products of the foregoing and all accessions to, substitutions and replacement for, and rents and profits of each of the foregoing.**

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
698385-1

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# EXHIBIT 3

**EXHIBIT 3**
**FORM OF LINE OF CREDIT NOTE**

U.S. $1,770,000.00                                                    March __, 2021

FOR VALUE RECEIVED, the undersigned, **collab9, LLC**, a Delaware limited liability company ("Borrower"), hereby promises to pay to the order of **Securecomm. LLC** (herein, together with any subsequent holder hereof, called "Lender"), the principal sum of ONE MILLION SEVEN-HUNDRED SEVENTY THOUSAND AND NO/100 DOLLARS ($1,770,000) plus interest, costs and attorneys' fees on the date on which such outstanding principal amounts become due and payable pursuant to the Loan Agreement (as defined below), in strict accordance with the Line of Credits thereof.  Borrower likewise unconditionally promises to pay to Lender interest from and after the date hereof on the outstanding principal amount of Line of Credit Loan at such interest rate, payable at such times and computed in such manner as are specified in the Loan Agreement and in strict accordance with the Line of Credits thereof.

This Line of Credit Note (this "Note") is issued pursuant to, and is the "Line of Credit Note" referred to in, Senior Priority Debtor in Possession Line of Credit Loan and Security Agreement dated of even date herewith (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), between Borrower and Lender, and Lender is and shall be entitled to all benefits thereof and of all other Loan Documents executed and delivered in connection therewith.  All capitalized Line of Credits used herein, unless otherwise defined herein, shall have the meanings ascribed to such Line of Credits under the Loan Agreement.

The entire unpaid principal balance and all accrued interest on this Note shall be due and payable in accordance with the Loan Agreement. All payments of principal and interest shall be made in Dollars and in immediately available funds as specified in the Loan Agreement.

Upon or after the occurrence of an Event of Default and for so long as such Event of Default exists, the principal balance and all accrued interest of this Note may be declared (or shall become) due and payable in the manner and with the effect provided in the Loan Agreement, and the unpaid principal balance hereof shall bear interest at the Default Rate as and when provided in Section 2.3 of the Loan Agreement.  If this Note is collected by or through an attorney at law, then Borrower shall be obligated to pay, in addition to the principal balance of and accrued interest on this Note, all costs of collection, including, without limitation, reasonable attorneys' fees and court costs.

All principal amounts of the Line of Credit Loan made by Lender to Borrower pursuant to the Loan Agreement, and all accrued and unpaid interest thereon, shall be deemed evidenced by this Note and shall continue to be owing by Borrower until paid in accordance with the Line of Credits of this Note and the Loan Agreement.

In no contingency or event whatsoever shall the amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Line of Credit Loan exceed the highest lawful rate

-1-

permissible under any law which a court of competent jurisdiction may deem applicable hereto; and, in the event of any such payment inadvertently paid by Borrower or inadvertently received by Lender, such excess sum shall be, at Borrower's option, returned to Borrower forthwith or credited as a payment of principal, but shall not be applied to the payment of interest. It is the intent hereof that Borrower not pay or contract to pay, and that Lender not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Borrower under applicable law.

Time is of the essence of this Note. To the fullest extent permitted by applicable law, Borrower, for itself and its legal representatives, successors and assigns, expressly waives presentment, demand, protest, notice of dishonor, notice of non-payment, notice of maturity, notice of protest, presentment for the purpose of accelerating maturity, diligence in collection, and the benefit of any exemption or insolvency laws.

Wherever possible each provision of this Note shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or remaining provisions of this Note. No delay or failure on the part of Lender in the exercise of any right or remedy hereunder shall operate as a waiver thereof, nor as an acquiescence in any default, nor shall any single or partial exercise by Lender of any right or remedy preclude any other right or remedy.

Borrower shall have the right to prepay this Note in full at any time without the imposition of any prepayment fee or penalty.

The rights of Lender and obligations of Borrower hereunder shall be construed in accordance with and governed by the laws (without giving effect to the conflict of law principles thereof) of the State of California.

To the fullest extent permitted by applicable law, Borrower and, by its acceptance hereof, Lender, each hereby waives the right to trial by jury in any action, suit, proceeding or counterclaim of any kind arising out of, related to or based in any way upon this Note or any of the matters contemplated hereby.

[Remainder of page intentionally left blank]

0060

IN WITNESS WHEREOF, Borrower has caused this Note to be executed and delivered by its duly authorized officers on the date first above written.

**collab9, LLC, A Delaware Limited Liability Company**
("Borrower")


By: _____
Name:  Kevin Schatzle
Title:  Chief Executive Office

0061

# EXHIBIT 2

1  Victor A. Sahn (CA Bar No. 97299)
      vsahn@sulmeyerlaw.com
2  David S. Kupetz (CA Bar No. 125062)
      dkupetz@sulmeyerlaw.com
3  Claire K. Wu (CA Bar No. 295966)
      ckwu@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Grand Ave, Suite 3400
   Los Angeles, California 90071
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7
   Attorneys for collab9, LLC,
8  Debtor and Debtor in Possession

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                 **LOS ANGELES DIVISION**

| 12 | In re | Case No. 2:21-bk-12222-ER |
|----|-------|---------------------------|
| 13 | COLLAB9, LLC, a Delaware limited liability company, | Chapter 11 |
| 14 | | **INTERIM ORDER:** |
| 15 | Tax ID:  95-4650291 | **(1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION LOAN SECURED BY SENIOR LIEN PURSUANT TO 11 U.S.C. § 364;** |
| 16 | Debtor. | |
| 17 | | **(2) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363;** |
| 18 | | |
| 19 | | **(3) SCHEDULING FINAL HEARING ON MOTION; AND** |
| 20 | | |
| 21 | | **(4) GRANTING RELATED RELIEF** |
| 22 | | [Relates to Dkt. No. ____] |
| 23 | | Hearing: |
| 24 | | Date:      March ____, 2021 |
| 25 | | Time:      __:___ a.m./p.m. |
| 26 | | Place:     Courtroom 1568 |
| 27 | | 255 E. Temple St. |
| 28 | | Los Angeles, CA 90012 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

The *Debtor's Emergency Motion for Interim and Final Orders: (1) Authorizing Debtor to Obtain Post-Petition Loan Secured By Senior Lien Pursuant to 11 U.S.C. § 364; (2) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (3) Scheduling Final Hearing on Motion; and (4) Granting Related Relief* [Dkt. No. ___ ] (the "Motion"), filed by collab9, LLC, a Delaware limited liability company, the debtor and debtor in possession in the above-captioned case (the "Debtor"), came on for emergency hearing on March ___, 2021, at __:___ a.m./p.m., before the Honorable Ernest M. Robles, United States Bankruptcy Judge, in Courtroom 1568 of the above-entitled Court, at 255 East Temple Street, Los Angeles, California 90012.  Appearances were as noted on the record of the hearing.

The Motion seeks the entry of this interim order (this "Order") and a final order (the "Final Order"): (1) authorizing the Debtor to obtain a senior secured postpetition line of credit in the principal amount of $1,770,000 (the "DIP Loan"), pursuant to section 364 of the Bankruptcy Code, from SecureComm. LLC, a Washington limited liability company (the "DIP Lender" or "SecureComm"), pursuant to the terms of this Order and that certain "Debtor in Possession Financing Agreement" by and between the Debtor and the DIP Lender in substantially the form attached to the Motion as Exhibit 1 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "DIP Loan Agreement");[1] (2) authorizing the Debtor to execute, deliver, and enter into the DIP Loan Agreement and other related loan documents (collectively, the "DIP Loan Documents"), and to perform such other and further acts as may be required in connection with the DIP Loan Documents; (3) granting security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code) to the DIP Lender to secure all obligations of the Debtor under and with respect to the DIP Loan, subject to the payment of: (i) fees of the United States Trustee as required under 28 U.S.C. § 1930(a)(6) fees (the "UST Fees"); and (ii) allowed fees and expenses of the Debtor's bankruptcy counsel as set forth in the DIP Loan Agreement (collectively, the "Professional Fees"); (4)

---

[1] Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the DIP Loan Agreement.

0063

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  approving the Debtor's proposed 13-week budget appended hereto as <u>Exhibit 1</u> (the "<u>Budget</u>"); (5)

2  authorizing the Debtor's use of cash collateral and funding under the DIP Loan Agreement to pay

3  ordinary and necessary operating and administrative expenses pursuant to the Budget, with the

4  provision: (a) for flexibility in connection with the Budget such that the Debtor may exceed the

5  disbursements forecasted in the Budget by up to 20% on a line-by-line basis, and to exceed

6  aggregate disbursements forecasted in the Budget by a total of 15%, measured on a cumulative

7  weekly basis; and (b) that, to the extent any amount in a disbursement category is unused during a

8  particular period, such amount be preserved and available for use in any subsequent period; (6)

9  modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to

10  implement, effectuate, and perform under the terms and provisions of the DIP Loan Documents and

11  this Order; (7) setting an emergency interim hearing (the "<u>Interim Hearing</u>") on this Motion

12  pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure ("<u>FRBP</u>") and applicable

13  Local Bankruptcy Rules of this Court to consider entry of this Order, which authorizes the Debtor

14  to borrow under the DIP Loan Documents up to an aggregate principal amount not to exceed

15  $1,770,000[2]; (8) finding that adequate notice of the Motion has been provided; (9) finding that any

16  credit extended and loans made to, cash collateral used by, and adequate protection provided by the

17  Debtor are in "good faith" pursuant to section 364(e) of the Bankruptcy Code; (10) pursuant to

18  FRBP 4001(b)(2) and 4001(c)(2), and applicable Local Bankruptcy Rules of this Court, (a)

19  scheduling a final hearing (the "<u>Final Hearing</u>") on the Motion to consider entry of the Final Order

20  authorizing the DIP Loan under the DIP Loan Documents on a final basis, and (b) the approval of

21  notice procedures with respect thereto; (11) waiving any applicable stay, including under FRBP

22  4001(b) and (c), and authorizing the immediate effectiveness of this Order; and (12) granting

23  related and ancillary relief; and the Interim Hearing having been held before this Court on March

24  ___, 2021; and this Court having considered the Motion and all pleadings related thereto, any

25  oppositions or other responses to the Motion, the record in this case, and the evidence,

26

27  _____

28  [2] However, upon approval of the Interim DIP Financing Order, $580,000 plus interest, costs and attorneys'
fees incurred prior to the bankruptcy filing will be utilized to pay off the Debtor's prepetition indebtedness
to Securecomm.

0064

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

representations, statements, and arguments presented by counsel at the Interim Hearing; and after due deliberation and consideration, and for the reasons set forth on the record at the Interim Hearing, and good and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:[3]

A.    <u>Commencement of Case</u>.  On March 19, 2021 (the "<u>Petition Date</u>"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

B.    <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.  Venue of the Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Adequate Notice</u>.  On March 22, 2021, the Debtor filed the Motion with this Court and pursuant to FRBP 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, and as directed by the Court, the Debtor has provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated (i) the Office of the United States Trustee (the "<u>UST</u>"); (ii) the Debtor's 20 largest unsecured creditors; (iii) SecureComm, the Debtor's prepetition secured lender; (iv) Mechanics Bank; (v) the local office for the Internal Revenue Service; (vi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001, or 9014 or requesting to receive notice prior to the date hereof; and (vii) any other party this Court orders be provided with notice of this Motion (collectively, the "<u>Notice Parties</u>").  Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and

---

[3] Pursuant to FRBP 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no

2    further notice relating to this proceeding is necessary or required.

3        D.    Cash Collateral.  For purposes of this Order, the term "Cash Collateral" shall mean

4    and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall

5    include and consist of, without limitation, all of the respective cash proceeds of the Postpetition

6    Collateral (as defined below in paragraph 8 of this Order), whether such interest existed as of the

7    Petition Date or arises thereafter pursuant to this Order, any other order of this Court, applicable law

8    or otherwise.

9        E.    Exigent Circumstances.  The Debtor has an immediate and critical need to obtain

10   postpetition funding under the DIP Loan and to use Cash Collateral in order to, among other things,

11   finance the ordinary costs of its operations, make payroll, satisfy other working capital and

12   operational needs, and satisfy the administrative expenses in this case.  The Debtor's access to

13   sufficient working capital and liquidity through the incurrence of postpetition funding under the DIP

14   Loan and the use of Cash Collateral under the terms of this Order is vital to the preservation and

15   maintenance of the value of the Debtor's estate (the "Estate").  Consequently, without access to the

16   DIP Loan and the use of Cash Collateral, to the extent authorized pursuant to this Order, the Debtor

17   and its Estate would suffer immediate and irreparable harm.

18       F.    No Alternative Sources of Funding.  Given the Debtor's current financial condition

19   and capital structure, the Debtor is unable to obtain (i) adequate unsecured credit allowable either (a)

20   under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the

21   Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of its

22   estate under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets

23   under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the

24   Bankruptcy Code, from sources other than the DIP Lender on terms more favorable than the terms of

25   the DIP Loan.  The only source of secured credit available to meet the Debtor's current needs and on

26   an immediate basis is the DIP Loan.  Among other things, Debtor has provided evidence to this

27   Court of attempts to obtain financing from other potential lenders and such evidence demonstrates

28   that it was not able to obtain such financing. The Debtor requires both additional financing under the

1    DIP Loan and the use of Cash Collateral under the terms of this Order in order to satisfy its post-

2    petition liquidity needs.  After considering all of its alternatives, the Debtor has concluded, in an

3    exercise of its sound business judgment, that the financing to be provided by the DIP Lender

4    pursuant to the terms of this Order and the DIP Loan Documents represents the best financing

5    presently available to the Debtor.

6        G.    Willingness of DIP Lender.  The DIP Lender has indicated a willingness to provide

7    the Debtor with financing, but solely on the terms and conditions set forth in this Order and in the

8    DIP Loan Documents.

9        H.    Section 364(d) Finding.  The security interests and liens granted pursuant to this

10   Order to the DIP Lender are appropriate under section 364(d) of the Bankruptcy Code because,

11   among other things: (i) such security interests and liens do not impair the interests of any holder of a

12   valid, perfected, prepetition security interest or lien in any property of the Estate, and/or (ii) the

13   holders of such security interests and liens have consented (or are deemed to have consented) to the

14   security interests and priming liens granted pursuant to this Order to the DIP Lender.

15       I.    Good Cause Shown.  Good cause has been shown for immediate entry of this Order

16   pursuant to FRBP 4001(b)(2) and (c)(2) and such relief is in the best interest of the Debtor, its Estate

17   and creditors.  In particular, the authorizations granted herein for the Debtor to execute the DIP Loan

18   Documents, to use the Cash Collateral, and to obtain interim financing,  are necessary to avoid

19   immediate and irreparable harm to the Debtor and its Estate, are fair and reasonable, reflect the

20   Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are

21   supported by reasonably equivalent value and fair consideration.

22       J.    Section 364(e); Good Faith.  The DIP Loan, DIP Loan Documents, use of Cash

23   Collateral, and provision of adequate protection contained herein have been negotiated in good faith

24   and at arms-length among the Debtor and the DIP Lender.  Accordingly, any credit extended and

25   loans made to, Cash Collateral used by, and adequate protection provided by, the Debtor pursuant to

26   this Order shall be, and hereby are, deemed to have been extended, issued, made, used or provided,

27   as the case may be, in "good faith" as required by, and within the meaning of, section 364(e) of the

28   Bankruptcy Code.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

0067

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. <u>Motion Granted</u>. The Motion is approved on an interim basis on the terms and conditions set forth in this Order. This Order shall become effective immediately upon its entry. To the extent any provisions in this Order conflict with any provisions of the DIP Loan Documents, the provisions of this Order shall control and govern to the extent of such conflict. All objections to the entry of this Order have been withdrawn or overruled.

2. <u>DIP Loan Documents</u>. The terms and conditions of the DIP Loan Agreement are hereby approved. The Debtor is hereby authorized to enter into and deliver the DIP Loan Agreement and such additional documents, instruments, notes and agreements as may be reasonably required by the DIP Lender to implement the terms or effectuate the purposes of this Order (as such additional documents, instruments, notes and agreements may be amended, restated, supplemented or otherwise modified from time to time, together with the DIP Loan Agreement, the "<u>DIP Loan Documents</u>"). The Debtor is hereby authorized to borrow money under the DIP Loan Agreement, in accordance with the terms of this Order and the DIP Loan Documents. Upon execution and delivery thereof by the Debtor, the DIP Loan Documents shall be incorporated by reference as part of this Order and shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor (and its Estate, successors and assigns) in accordance with the terms thereof.

3. <u>Amendments</u>. The Debtor is hereby authorized, without further notice, motion or application to, order of, or hearing before, this Court, to enter into agreements with the DIP Lender providing for any non-material modifications to the DIP Loan Agreement, or of any other modifications to the DIP Loan Agreement necessary to conform the DIP Loan Agreement to this Order, and the Debtor may make any non-material modifications to the Budget; <u>provided</u>, <u>however</u>, that notice of any material modification or amendment to the Budget or the DIP Loan Agreement shall be provided to counsel to the U.S. Trustee, any party who appeared at the preliminary hearing on the DIP Financing and parties who have requested Special Notice in this case. These parties shall have three (3) days from the date of such notice within which to object in writing to such material

1    modification or amendment.  If the U.S. Trustee timely objects in writing (served on counsel for the

2    DIP Lender and the Debtor) to any material modification or amendment to the Budget or the DIP

3    Loan Agreement, then such modification or amendment shall only be permitted pursuant to an order

4    of this Court.

5        4.        Permitted Use. Notwithstanding anything in this Order to the contrary, the Debtor is

6    authorized to use the Cash Collateral and any remaining proceeds of the DIP Loan to pay any and all

7    ordinary and necessary operating and administrative expenses of the Debtor, solely in accordance

8    with the DIP Loan Documents, this Order, and the Budget, with the provision: (i) for flexibility in

9    connection with the Budget such that the Debtor may exceed the disbursements forecasted in the

10   Budget by up to 20% on a line-by-line basis, and to exceed aggregate disbursements forecasted in

11   the Budget by a total of 15%. measured on a cumulative weekly basis; and (ii) that, to the extent any

12   amount in a disbursement category is unused during a particular period, such amount be preserved

13   and available for use in any subsequent period.  The DIP Loan shall mature and be payable in full at

14   the earlier of: (1) the first business day that is 90 days after closing of the DIP Loan; (2)

15   confirmation of a chapter 11 plan in this Chapter 11 Case; (3) conversion of the Chapter 11 Case to a

16   case under chapter 7 of the Bankruptcy Code; (4) dismissal of the Chapter 11 Case; (5) appointment

17   of a chapter 11 trustee in this Chapter 11 Case; or (6) a sale of all or substantially all of the assets of

18   the Estate.

19       5.        Postpetition Obligations.  For purposes of this Order, the term "Postpetition

20   Obligations" shall mean all amounts owing under the DIP Loan Agreement and other DIP Loan

21   Documents and shall include the principal of, interest on, fees, costs, expenses and other charges

22   owing in respect of, such amounts (including, without limitation, any attorneys,' accountants,'

23   financial advisors' and other fees, costs and expenses that are chargeable or reimbursable under the

24   DIP Loan Documents), and any obligations in respect of letters of credit or indemnity claims, in each

25   case whether contingent or otherwise.  The amount provided under the DIP Loan Agreement is a line

26   of credit in the amount of $580,000.00.  However, upon approval of this Order, Lender shall

27   immediately apply $580,000 of the loan proceeds to payment of Lender's Prepetition Indebtedness

28   (as defined in the DIP Loan Agreement).  The balance of the loan proceeds, in the amount of

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   $1,191,000 shall be available under the line of credit note for utilization pursuant to this DIP Loan

2   Agreement and this Debtor in Possession Financing Order.

3         6.    <u>Interest, Fees, Costs and Expenses</u>.  The Postpetition Obligations shall bear interest at

4   the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and

5   conditions of, this Order and the DIP Loan Documents, in each case without further notice, motion

6   or application to, order of, or hearing before, this Court.  The Debtor shall pay on demand all fees,

7   costs, expenses and other charges payable under the terms of the DIP Loan Documents, including,

8   without limitation, all fees, costs and expenses described in the DIP Loan Agreement, in each case

9   whether or not the DIP Loan Agreement and transactions contemplated therein are consummated.

10   All such fees, costs and expenses (if any) incurred through and including the Closing Date (as

11   defined in the DIP Loan Agreement) shall be paid on the Closing Date, and none of such fees, costs

12   and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any

13   such payment shall be required to file with respect thereto any interim or final fee application with

14   this Court.  With respect to all such fees, costs, and expenses incurred after the Closing Date, the

15   DIP Lender shall submit summaries of its professional fee invoices to the Debtor and the U.S.

16   Trustee.  Such summary invoices may be redacted to the extent necessary to delete any information

17   subject to the attorney-client privilege, any information constituting attorney work product, or any

18   other confidential information, and the provision of such summaries shall not constitute any waiver

19   of the attorney-client privilege or of any benefits of the attorney work product doctrine.  The U.S.

20   Trustee may object to the reasonableness of the fees, costs, and expenses included in any

21   professional fee summary invoice submitted by the DIP Lender; <u>provided</u> that, (i) any portion of any

22   such summary invoice that is not the subject of any objection shall be paid immediately, and (ii) any

23   objection shall be forever waived and barred unless (a) it is filed with this Court and served on

24   counsel to the DIP Lender no later than ten (10) days after the objecting party's receipt of the

25   applicable professional fee summary invoice, and (b) it describes with particularity the items or

26   categories of fees, costs, and expenses that are the subject of the objection and provides the specific

27   basis for the objection to each such item or category of fees, costs, and expenses.  Any hearing on an

28   objection to payment of any fees, costs, and expenses of the DIP Lender set forth in a professional

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   fee summary invoice shall be limited to the reasonableness or necessity of the particular items of

2   categories of the fees, costs and expenses which are the subject of such objection.  The Debtor shall

3   indemnify the DIP Lender (and other applicable parties) to the extent set forth in the DIP Loan

4   Documents.  All such unpaid fees, costs, expenses, and charges that have not been disallowed by this

5   Court on the basis of an objection filed by the U.S. Trustee in accordance with the terms hereof shall

6   constitute Postpetition Obligations and shall be secured by the Postpetition Collateral as specified in

7   this Order.

8           7.    Budget.  The Budget attached hereto as Exhibit 1 is a 13-week budget, which reflects

9   on a line-item basis the Debtor's anticipated cumulative cash receipts, and expenditures on a weekly

10  basis and all necessary and required cumulative expenses which the Debtor expects to incur during

11  each week of the Budget, is approved.  The Budget may be modified or supplemented from time to

12  time by additional budgets (covering any time period covered by a prior budget or covering

13  additional time periods) prepared by the Debtor, in each case without further notice, motion or

14  application to, order of, or hearing before, this Court (except as required by paragraph 3 above).  The

15  Debtor may exceed the disbursements forecasted in the Budget by up to 20% on a line-by-line basis,

16  and may exceed aggregate disbursements forecasted in the Budget by a total of 15%, measured on a

17  cumulative weekly basis.  In addition, to the extent any amount in a disbursement category is unused

18  during a particular period, such amount be preserved and available for use in any subsequent period.

19          8.    Postpetition Liens.  Effective only upon Closing of the DIP Loan, as security for the

20  full and timely payment of the Postpetition Obligations, the DIP Lender is hereby granted, pursuant

21  to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable,

22  unavoidable and fully perfected security interests, liens and mortgages (collectively, the

23  "Postpetition Liens") in and upon all prepetition and postpetition real and personal, tangible and

24  intangible property and assets of the Debtor of any kind or nature whatsoever, wherever located,

25  whether now existing or hereafter acquired or arising, including, without limitation, cash

26  equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory,

27  instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real

28  property interests, intellectual property, general intangibles, investment property, supporting

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  obligations, letter of credit rights, one hundred percent (100%) of the capital stock of the Debtor's

2  direct and indirect domestic and foreign subsidiaries, all inter-company notes held by the Debtor,

3  copyrights, trademarks, trade names, licenses, and rights to payment including tax refund claims and

4  the proceeds, products, offspring, rents and profits of all of the foregoing, including insurance

5  proceeds (all of the foregoing, the "Postpetition Collateral"); provided, however, that the

6  Postpetition Collateral shall not include commercial tort claims, actions for preferences fraudulent

7  conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 549 and 550 of

8  the Bankruptcy Code, (the "Avoidance Actions"), or the proceeds of the foregoing ("Excluded Asset

9  Proceeds").  Such Postpetition Liens shall not be released except to the extent that Full Payment (as

10  defined in DIP Loan Agreement) of the Postpetition Obligations has occurred in cash and the DIP

11  Lender has received a release from the Debtor and its Estate in form and substance reasonably

12  acceptable.  Notwithstanding the foregoing, any Postpetition Lien with respect to any of the Debtor's

13  leasehold rights shall constitute a lien on the proceeds from the sale of such leasehold rights and not

14  a direct lien on the actual leasehold rights.

15        9.    Other Priority Matters.  Subject to the Carve-Out, the Postpetition Liens: (a) shall,

16  pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in

17  and liens on all Postpetition Collateral that is not otherwise subject to any Prior Lien (defined

18  below); Other than the Carve-Out , the Postpetition Liens shall at all times be senior to the following

19  (collectively, the "Subordinate Liens and Related Rights"):  (i) the rights of the Debtor and any

20  successor trustee or estate representative in this case or any other subsequent proceedings under the

21  Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if this case is converted to

22  a case under Chapter 7 of the Bankruptcy Code (collectively, the "Successor Case"); and (ii) any

23  security interest or lien which is avoided or otherwise preserved for the benefit of the Estate under

24  section 551 or any other provision of the Bankruptcy Code.  The Postpetition Liens shall be deemed

25  legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or

26  avoidance, for all purposes in the this Chapter 11 case and any Successor Case.  Other than the

27  Carve-Out and the Prior Liens, no other liens or security interests, whether for adequate protection or

28  otherwise, shall be senior or equal to or *pari passu* with the Postpetition Liens in this Chapter 11

1    case or any Successor Case without the express written consent of the DIP Lender given in

2    accordance with the DIP Loan Agreement (which consent may be withheld in its sole discretion).

3        10.    Super-Priority Claim.  In addition to the Postpetition Liens, the DIP Lender is hereby

4    granted, for all Postpetition Obligations, an allowed super-priority administrative expense claim

5    pursuant to Section 364(c)(1) of the Bankruptcy Code (the "Super-Priority Claim") against the

6    Debtor and its Estate.  Except for the Carve-Out, the Super-Priority Claim shall have priority over all

7    other costs and expenses of administration of any kind (and no cost or expense of administration

8    shall be senior to, equal to, or *pari passu* with, the Super-Priority Claim), including those specified

9    in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113

10    or 1114 or any other provision of the Bankruptcy Code or otherwise.  Notwithstanding the

11    foregoing, the Super-Priority Claim shall not have recourse to Excluded Asset Proceeds.

12        11.    No Reduction or Impairment.  No obligation or liability owed, or payment, transfer or

13    grant of security, to the DIP Lender under this Order or any other DIP Loan Document shall be

14    stayed, restrained, voidable, impaired, or recoverable under the Bankruptcy Code or under any

15    applicable law (including, without limitation, under section 502(d) or 548 of the Bankruptcy Code or

16    under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act

17    or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or

18    counterclaim, whether in this Chapter 11 case or any Successor Case.  The Postpetition Obligations,

19    once paid by the Debtor, shall be non-refundable.

20        12.    Carve-Out.

21        (a)    Generally.  Notwithstanding anything to the contrary contained in this Order,

22    the liens and claims granted to the DIP Lender in this Order and/or any of the DIP Loan Documents

23    shall be subject to the payment of the allowed fees, expenses, and claims (collectively, the "Carve-

24    Out"), but only to the extent that there are not sufficient, unencumbered funds in the Estate to pay

25    such amounts and/or from any retainers held by any of the Debtor's professionals(as defined below):

26        (i)    the claims of (x) professionals of the Debtor whose retention is

27    approved by this Court during the Chapter 11 Case pursuant to Sections 327 and 328 of the

28    Bankruptcy Code (the "Debtor's Professionals") for unpaid fees and expenses which were incurred

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   on and after the Petition Date; <u>provided</u> that, in each case, such fees and expenses of the Debtor's

2   Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the

3   Bankruptcy Code.  The payments to Debtor's bankruptcy counsel from the proceeds of Lender's loan

4   shall be limited to $275,000 based upon the Debtor's intention to seek approval of a sale of

5   substantially all of its assets by May 31, 2021.  However, if proceeds in addition to those required to

6   pay the DIP Lender in full are realized by the Debtor and Debtor's bankruptcy counsel incurs fees

7   and costs in excess of $275,000 after the filing of this bankruptcy case, Debtor's counsel may seek

8   satisfaction of the balance of its fees and costs from these additional proceeds; and  unpaid fees

9   payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of

10  Title 28 of the United States Code.

11          (b)      <u>Weekly Advances</u>.  Subject to the terms and conditions of this Order and the

12  DIP Loan Documents, this subordination shall be applicable to all amounts due to Debtor's

13  bankruptcy counsel in respect of (i) making weekly advances of funds to Debtor's counsel in the

14  amount of $25,000 as provided in the Budget; (which funds will be held in Debtor's Counsel's trust

15  account and otherwise be subject to the provisions of the approved Employment Application of

16  Debtor's bankruptcy counsel, Sulmeyer Kupetz); and (ii) each such advance with respect to Debtor's

17  Counsel, a "<u>Debtor's Counsel Advance</u>" up to $275,000 after the filing of this chapter 11 case and

18  up to the date that the sale of the Debtor's assets is approved by this Court as provided in sections

19  327, 328, 330 and 331 of the Bankruptcy Code; for payment of compensation and reimbursement of

20  reasonable expenses of Debtor's bankruptcy counsel  in accordance with the Budget. However, to

21  the extent that the DIP Lender's claim and liens are paid in full and there are remaining proceeds in

22  the bankruptcy estate from a sale or other transaction that results in the DIP Lender being paid in

23  full, Debtor's bankruptcy counsel shall be entitled to be paid from such additional proceeds.  The

24  limitation on payment to Debtor's bankruptcy counsel provided for in this paragraph is contingent

25  upon the Debtor's continued pursuit of  sale of the Debtor's assets as provided in the DIP Motion,

26  this DIP Order and other filings by the Debtor with this Court.  It shall be further subject to the

27  approval of the Sale on or before May 20, 2021 and the sale closing by May 31, 2021.

28          13.      <u>Reservation of Rights</u>.  Payment of any fees and expenses  pursuant to the Carve-Out

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    shall not be deemed to, (i) reduce the Debtor's obligations owed to the DIP Lender or (ii) modify,

2    alter, or otherwise affect any of the liens and security interests of the DIP Lender in the Postpetition

3    Collateral (or its claims against the Debtor).  Nothing herein shall impair, or be construed to impair,

4    the ability of any party to object to any of the fees, expenses, reimbursement or compensation of the

5    Debtor's Professionals.

6          14.    <u>Waivers</u>.  Except for the Carve-Out and Prior Liens, no claim or lien having a priority

7    superior to or *pari passu* with those granted pursuant to this Order to the DIP Lender, shall be

8    granted or allowed while any portion of the DIP Loan (or any refinancing thereof) or the Postpetition

9    Obligations remain outstanding.

10          15.    <u>Automatic Perfection</u>.

11          (a)    The Postpetition Liens  shall not be subject to challenge and, immediately

12    upon becoming effective as set forth in this Order, shall attach and become valid, perfected,

13    enforceable, non-avoidable and effective by operation of law as of the Petition Date without any

14    further notice, act or action of or by any person or entity, and without the necessity of execution by

15    the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien

16    applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents.  If

17    the DIP Lender hereafter requests that the Debtor execute and deliver to it any financing statements,

18    security agreements, collateral assignments, mortgages, or other instruments and documents

19    considered by such party to be reasonably necessary or desirable to further evidence the perfection

20    of the liens and security interests provided under this Order, then the Debtor is hereby authorized

21    and directed, at its sole cost and expense, to promptly execute and deliver such financing statements,

22    security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP

23    Lender is hereby authorized to file or record such documents in their respective discretion, in which

24    event all such documents shall be deemed to have been filed or recorded at the time and on the date

25    of entry of this Order, but with the priorities as set forth herein.  The DIP Lender may (in its sole

26    discretion), but shall not be required to, file a certified copy of this Order in any filing or recording

27    office in any state, county or other jurisdiction in which the Debtor has real or personal property and

28    such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

0075

1    such party's interests in the Postpetition Collateral at the time and on the date of entry of this Order,

2    but with the priorities as set forth herein.

3          (b)     To the extent that any applicable non-bankruptcy law would otherwise restrict

4    the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized

5    or created under or in connection with this Order or the DIP Loan Documents, or otherwise would

6    impose filing or registration requirements or fees and charges with respect thereto, such law is

7    hereby pre-empted to the maximum extent permitted by the United States Constitution, the

8    Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy

9    Court; provided that the DIP Lender may still take such steps as it wishes to perfect its respective

10   security interests and liens under otherwise applicable state law without waiving the benefits of this

11   provision of this Order.

12        16.    Default Under Other Documents.

13         (a)     The DIP Lender shall have all rights and remedies with respect to the Debtor

14   and any other rights, remedies, benefits and privileges as are set forth in this Order and the DIP Loan

15   Documents (as applicable).  Except as otherwise expressly provided herein, no provision contained

16   in any prepetition or postpetition agreement to which the Debtor is a party, or under which the

17   Debtor is obligated or bound, that restricts, conditions, prohibits, limits or impairs in any way the

18   Debtor from (i) granting the DIP Lender the postpetition security interests or liens upon any of its

19   assets (subject to the limitations with respect to the Debtor's leasehold interest set forth in paragraph

20   8 above), or (ii) otherwise entering into and complying with all of the terms, conditions and

21   provisions of this Order and the DIP Loan Documents, shall be enforceable against the Debtor.

22         (b)     Notwithstanding anything contained herein to the contrary, and without

23   limiting any other rights or remedies of the DIP Lender contained in this Order or the DIP Loan

24   Documents, or otherwise available at law or in equity, the rights of the DIP Lender to enter onto the

25   Debtor's leased premises shall be limited to (i) any such rights agreed to in writing by the applicable

26   landlord pursuant to any separate agreement by and between such landlord and the DIP Lender, if

27   any, (ii) any rights that the DIP Lender has under applicable non-bankruptcy law, if any, and (iii)

28   such rights as may be granted by the Court on a separate motion with notice to the applicable

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    landlords of the leased premises and an opportunity for such landlords to respond and be heard.

2        17.    <u>Successors and Assigns</u>.  The provisions of this Order and the DIP Loan Documents

3    shall, as applicable, be binding upon and inure to the benefit of the DIP Lender, and the Debtor and

4    its Estate, and their respective successors and assigns, including, without limitation, any trustee or

5    other fiduciary hereafter appointed as a legal representative of the Debtor or its Estate, whether in

6    this Chapter 11 Case or any Successor Case.

7        18.    <u>Survival</u>.  The provisions of this Order and any actions taken pursuant thereto: (a)

8    shall survive the entry of any order: (i) converting the Chapter 11 Case to a case under chapter 7 of

9    the Bankruptcy Code; or (ii) dismissing or closing the Chapter 11 Case; and (b) shall continue in full

10    force and effect notwithstanding the entry of any such order.

11        19.    <u>Section 364(e); Effect of Modification or Appeal</u>.  Based on the findings set forth in

12    this Order and on the record of the Interim Hearing, in consideration for the financing provided

13    under DIP Loan, the DIP Lender is entitled to, and hereby is granted, the full rights, benefits,

14    privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with respect

15    to the Postpetition Obligations (and related liens, claims, rights, remedies and benefits) created or

16    authorized by this Order in the event that this Order or any authorization or approval contained

17    herein is subsequently stayed, vacated, reversed, amended or modified on appeal.  Any subsequent

18    stay, modification, reversal, amendment or vacation of this Order shall not alter, modify or affect the

19    validity, priority, perfection or enforceability of any claim, lien, or security interest of the DIP

20    Lender authorized, created or granted pursuant to this Order and outstanding immediately prior to

21    the actual receipt of written notice by the DIP Lender of the effective date of such stay, modification,

22    reversal, amendment or vacation.  Notwithstanding any such stay, modification, reversal,

23    amendment or vacation, all obligations and other financial accommodations made pursuant to this

24    Order, all Postpetition Obligations incurred and uses of Cash Collateral permitted by the Debtor

25    pursuant hereto prior to the actual receipt of written notice by the DIP Lender of the effective date of

26    such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the

27    original provisions of this Order and the DIP Lender shall be entitled to all of the rights, privileges,

28    remedies, protections and benefits contained or granted in section 364(e) of the Bankruptcy Code,

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  the DIP Loan Documents and this Order (as applicable), including, without limitation, the

2  Postpetition Liens and Super-Priority Claims.

3      20.    <u>Modification of Automatic Stay; Other Remedies</u>.

4      (a)    Subject to sub-paragraph (c) below, the automatic stay pursuant to section 362

5  of the Bankruptcy Code is hereby lifted and vacated as to the DIP Lender to the extent necessary to

6  permit it to perform in accordance with, provide any notice under, and exercise, enjoy and enforce

7  its rights, benefits, privileges and remedies pursuant to this Order and the other DIP Loan

8  Documents, in each case without further notice, motion or application to, order of, or hearing before,

9  this Court.  Subject to sub-paragraph (c) below, regardless of any change in circumstances (whether

10  or not foreseeable), neither section 105 of the Bankruptcy Code nor any other provision of the

11  Bankruptcy Code or applicable law shall be utilized to prohibit the DIP Lender's exercise,

12  enjoyment and enforcement of any of such rights, benefits, privileges and remedies as and to the

13  extent provided in this Order.

14      (b)    Subject to sub-paragraph (c) below, the DIP Lender is hereby authorized and

15  granted leave from the automatic stay under section 362 of the Bankruptcy Code to do the following

16  on and after the occurrence and continuation of an Event of Default under the DIP Loan Agreement,

17  in each case without further notice, motion or application to, order of, or hearing before, this Court:

18      (i)    terminate any obligation of DIP Lender to make loans or other
extensions of credit under the DIP Loan Documents or this Order; and

19

20      (ii)    declare all Postpetition Obligations immediately due and payable in
full in cash.

21      (c)    On and after the occurrence and continuation of an Event of Default under the

22  DIP Loan Agreement, and after obtaining Court approval upon notice and hearing, the DIP Lender

23  shall be entitled to foreclose or otherwise enforce its respective liens on any or all of the Postpetition

24  Collateral and/or to exercise any other default-related rights and remedies under the DIP Loan

25  Documents, this Order, and applicable law to the extent not already permitted pursuant to sub-

26  paragraph (b) above.  The parties shall use their best efforts to schedule and attend an expedited

27  Court hearing within three (3) business days of notice of the Event of Default being given to the

28  Debtor and its counsel, the U.S. Trustee, counsel for the Committee if there is one or, alternatively,

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

0078

1  notice to the twenty (20) largest unsecured creditors in this Case and any party who has requested

2  special notice .

3       21.    <u>No Waiver of Rights</u>.

4            (a)    <u>Generally</u>.  Without limiting the terms and conditions of paragraphs 8 through

5  11, and 13 the DIP Lenderexpressly reserves, any and all claims, causes of action, defenses, rights

6  and remedies it has or may have pursuant to any or all of the DIP Loan Documents,  the Bankruptcy

7  Code and/or under applicable law against or with respect to the Debtor and any other Person or

8  entity.

9            (b)    <u>Additional Rights Preserved</u>.  Without limiting the generality of this

10 paragraph 21, the DIP Lender, may, as applicable, petition this Court for any such additional

11 protection it may reasonably require with respect to the Postpetition Obligations, or otherwise,

12 including, without limitation, its right to request additional adequate protection of its interests in the

13 Postpetition Collateral, as applicable.  Except as otherwise set forth herein, entry of this Order shall

14 not in any way constitute agreement, consent, or acquiescence by the DIP Lender, to the terms of

15 any plan of reorganization filed in the Chapter 11 Case.

16      22.    <u>No Liability to Third Parties</u>.  In making decisions to advance loans to the Debtor, in

17 administering any loans, in permitting the Debtor to use Cash Collateral, in approving any budget or

18 in taking any actions permitted by this Order or the DIP Loan Documents, as applicable, the DIP

19 Lender shall not (i) be deemed to be in control of the operations of the Debtor or to be acting as a

20 "controlling person," "responsible person" or "owner or operator" with respect to the operation or

21 management of the Debtor, and/or (ii) owe any fiduciary duty to the Debtor, its creditors or its

22 Estate, and its relationship with the Debtor shall not constitute or be deemed to constitute a joint

23 venture or partnership with the Debtor.

24      23.    <u>Additional Defaults</u>. In addition and without limitation of the Events of Default set

25 forth in and defined in the DIP Loan Documents, this Order, or any Final Order, it shall be a default

26 hereunder (and constitute an "Event of Default" under the DIP Loan Agreement and this Order) if

27 (a) a sale of substantially all assets is proposed by the Debtor without the written consent of the DIP

28 Lender that would not indefeasibly pay the Postpetition Obligations in full in cash,  (b) the Debtor

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   fails to comply with any of the terms of this Order, or (c) at the option of the DIP Lender in its sole

2   discretion, the occurrence of any Event of Default under the DIP Loan Agreement.  Any order for

3   dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Lender

4   under this Order.  No order providing for the sale of substantially all of the assets of the Debtor

5   under section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of

6   such transaction, all liens securing the Postpetition Obligations are transferred to the proceeds of

7   such sale and such proceeds shall, at the closing of such sale, be utilized to pay the outstanding

8   indebtedness of the DIP Lender in full. If an order dismissing any of these Chapter 11 Case under

9   section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, (i) the claims,

10  security interests, liens and claims granted to or for the benefit of the DIP Lender pursuant to this

11  Order shall continue in full force and effect and shall maintain their priorities as provided in this

12  Order, as applicable, until all Postpetition Obligations shall have been paid and satisfied in full (and

13  that such claims and liens, shall, notwithstanding such dismissal, remain binding on all parties in

14  interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes

15  of enforcing such claims and liens.

16          24.     Proofs of Claim.  The DIP Lender will not be required to file a proof of claim or

17  request for approval of administrative expenses in any of the Chapter 11 Case or any Successor

18  Case, and the provisions of this Order relating to the amount of the Postpetition Obligations shall

19  constitute a timely filed proof of claim and/or administrative expense request in the Chapter 11 Case.

20          25.     Critical Vendors.  To the extent that critical vendor status is conferred upon any entity

21  in this Chapter 11 Case, whether by motion filed by the Debtor or otherwise, such entity's claims

22  shall be deemed to be subordinate to the Postpetition Obligations regardless of whether such entity

23  executes a subordination agreement in favor of the DIP Lender.

24          26.     Final Hearing; Procedure for Objections to and Entry of Final Order.  The Motion is

25  set for a Final Hearing before this Court at __:____ a.m./p.m. on March ___, 2021, at which time

26  any party in interest may present any timely filed objections to the entry of the Final Order, which

27  order shall be in form and substance acceptable to the DIP Lender in its sole discretion.  The Debtor

28  may file and serve on the Notice Parties any further papers in support of the Motion and entry of a

1   Final Order no later than March ___, 2021 (the "<u>Supplemental Papers</u>").  Any objection, opposition,

2   or other response to any such Supplemental Papers or to the entry of a Final Order shall be filed and

3   served on the Debtor's counsel and the U.S. Trustee so that they are received no later than March

4   ___, 2021 (the "<u>Objection Deadline</u>").  The Debtor and the DIP Lender may file and serve any reply

5   papers so that they are received no later March ___, 2021.  The Debtor shall, in accordance with the

6   Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules of this Court, promptly serve a

7   notice of the Final Hearing, the Objection Deadline, and entry of this Order, together with a copy of

8   this Order, by electronic mail, facsimile, hand delivery, or overnight delivery to the Notice Parties.

9   Any objections by creditors or other parties-in-interest to any of the provisions of the Final Order

10   shall be deemed forever waived and barred unless timely filed and served in accordance with this

11   paragraph.

12              ###

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

0081

# EXHIBIT 1



**COLLAB9 CASH FLOW FOR MAR 2021 to Jun 2021**

**Updated 03/19/21**

BANKRUPTCY PERIOD

| | PAID/REC | PAID/REC | BK Filing 3/19/21 This Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash RECONCILIATION** | **03/01 - 03/07** | **03/08 - 03/14** | **03/15 - 03/21** | **03/22 - 03-28** | **03/29 - 04/04** | **04/05 - 04/11** | **04/12 - 04-18** | **04/19 - 04/25** | **04/26 - 05/02** | **05/03 - 05/09** | **05/10 - 05/16** | **05/17 - 05/23** | **05/24 - 05/30** | **05/31 - 06/06** | **06/07 - 06/13** | **06/14 - 06/20** | **Grand Total** | **Notes** | **Notes** |
| **Beginning Cash Balance** | 395,786 | 234,229 | 570,154 | 358,050 | 289,710 | 175,456 | 77,105 | 21,336 | 13,915 | 20,181 | 11,384 | 9,288 | 30,226 | 29,925 | 27,686 | 26,289 | **809,015** | | |
| **Actual Collections** | 18,757 | 75,865 | 351 | | | | | | | | | | | | | | **181,049** | | |
| **Projected Collections** | | | | | | 55,000 | | | | 55,000 | | 160,000 | | | 55,000 | | **325,000** | | |
| **SecureComm DIP Loan** | | | | | | | | 160,000 | 265,000 | 150,000 | 60,000 | 50,000 | 25,000 | 310,000 | 25,000 | 145,000 | **1,190,000** | A | **DIP Loan Summation** |
| **SecureComm Note # 1** | | 380,000 | | | | | | | | | | | | | | | **380,000** | B | **A+ B+C=** |
| **Dollab Note** | | | | | | | | | | | | | | | | | **200,000** | C | **$ 1,770,000.00** |
| **Operating Expenses (SEE BELOW)** | (180,315) | (39,940) | (212,455) | (28,341) | (114,254) | (128,351) | (30,769) | (141,691) | (233,734) | (188,797) | (37,095) | (164,062) | (301) | (287,239) | (56,397) | (116,833) | **(2,459,877)** | | |
| **Legal Expenses (See Below)** | 0 | (80,000) | 0 | (40,000) | 0 | (25,000) | (25,000) | (25,730) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | **(595,730)** | | |
| **CASH Remaining Balance** | **234,229** | **570,154** | **358,050** | **289,710** | **175,456** | **77,105** | **21,336** | **13,915** | **20,181** | **11,384** | **9,288** | **30,226** | **29,925** | **27,686** | **26,289** | **29,456** | **29,456** | | |

| | PAID | PAID | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Legal** | **03/01 - 03/07** | **03/08 - 03/14** | **03/15 - 03/21** | **03/22 - 03-28** | **03/29 - 04/04** | **04/05 - 04/11** | **04/12 - 04-18** | **04/19 - 04/25** | **04/26 - 05/02** | **05/03 - 05/09** | **05/10 - 05/16** | **05/17 - 05/23** | **05/24 - 05/30** | **05/31 - 06/06** | **06/07 - 06/13** | **06/14 - 06/20** | **Grand Total** | **Notes** | **Notes** |
| Law office of Herbert Hafif | | | | | | | | | | | | | | | | | (150,000) | Funded by Dollab Note | |
| Sulmeyer Kupetz - Phase 1 | | | | | | | | | | | | | | | | | (50,000) | Funded by Dollab Note | |
| Sulmeyer Kupetz - Phase 2 | | (80,000) | | | | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (355,000) | | |
| Independent Director | | | | (25,000) | | | | | | | | | | | | | (25,000) | | |
| US Court Trustee - Estimated QTR BK Fees based on 0.4% 63 | | | | | | | | (730) | | | | | | | | | (730) | | |
| Other Legal | | | | (15,000) | | | | | | | | | | | | | (15,000) | | |
| **Total Legal** | **0** | **(80,000)** | **0** | **(40,000)** | **0** | **(25,000)** | **(25,000)** | **(25,730)** | **(25,000)** | **(25,000)** | **(25,000)** | **(25,000)** | **(25,000)** | **(25,000)** | **(25,000)** | **(25,000)** | **(595,730)** | | |

| | PAID | PAID | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sum of Amount** | | | | | | | | | | | | | | | | | |
| **Row Labels** | **03/01 - 03/07** | **03/08 - 03/14** | **03/15 - 03/21** | **03/22 - 03-28** | **03/29 - 04/04** | **04/05 - 04/11** | **04/12 - 04-18** | **04/19 - 04/25** | **04/26 - 05/02** | **05/03 - 05/09** | **05/10 - 05/16** | **05/17 - 05/23** | **05/24 - 05/30** | **05/31 - 06/06** | **06/07 - 06/13** | **06/14 - 06/20** | **Grand Total** |
| **Connectivity & Telecom** | (2,310) | (6,394) | | | (6,601) | (6,542) | | | (8,300) | (6,600) | | | | (8,300) | (6,600) | | (61,442) |
| **Consulting** | (13,308) | | (33,160) | | | (25,760) | (5,000) | | | (25,760) | (5,000) | | | (25,760) | | (5,000) | (180,148) |
| **Data Center Charges** | | | | | (38,808) | | | | (38,500) | | | | | (38,500) | | | (194,854) |
| **HW & SW - Maintenance & support** | (9,326) | (1,000) | (850) | (19,790) | (11,169) | (3,329) | (18,915) | (12,239) | (186,634) | (10,000) | (24,224) | (16,477) | | (73,042) | (11,704) | (105,882) | (537,849) |
| **Insurance (Business & Medical)** | (22,648) | | | | (26,900) | | | | | (26,900) | | (17,595) | | (26,900) | (28,500) | | (177,612) |
| **Local Tax** | (25) | (3,186) | (364) | (581) | | | (3,398) | (822) | (300) | | (2,883) | (1,034) | (262) | | (2,705) | (2,995) | (25,699) |
| **Other Exp** | | (660) | (2,879) | | | (588) | (3,400) | | | | (3,988) | | | | (1,088) | (2,900) | (27,615) |
| **Outsource** | (4,073) | | (37,708) | | (20,000) | | | (37,708) | | | | (20,000) | | | | | (161,270) |
| **Payroll** | (101,648) | | (136,600) | | | (86,200) | | (86,200) | | (103,000) | | (103,000) | | (103,000) | | | (926,748) |
| **Payroll & Other Related items** | (5,275) | (1,047) | | (7,969) | | (5,682) | | (4,682) | | (5,900) | (1,000) | (5,900) | | (1,100) | (5,800) | | (56,913) |
| **Rent** | (11,076) | | (894) | | (10,776) | | (56) | (39) | | (10,637) | | (56) | (39) | (10,637) | | (56) | (56,197) |
| **Legal** | (10,625) | (27,653) | | | | (250) | | | | | | | | | | | (53,528) |
| **Grand Total** | **(180,315)** | **(39,940)** | **(212,455)** | **(28,341)** | **(114,254)** | **(128,351)** | **(30,769)** | **(141,691)** | **(233,734)** | **(188,797)** | **(37,095)** | **(164,062)** | **(301)** | **(287,239)** | **(56,397)** | **(116,833)** | **(2,459,877)** |

EXHIBIT 3

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Victor A. Sahn (CA Bar No. 97299)<br>  vsahn@sulmeyerlaw.com<br>David S. Kupetz (CA Bar No. 125062)<br>  dkupetz@sulmeyerlaw.com<br>Claire K. Wu (CA Bar No. 295966)<br>  ckwu@sulmeyerlaw.com<br>**Sulmeyer**Kupetz<br>A Professional Corporation<br>333 South Grand Ave, Suite 3400<br>Los Angeles, California 90071<br>Telephone: 213.626.2311<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:*  collab9, LLC, Debtor and Debtor in Possession | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>COLLAB9, LLC, a Delaware limited liability company,<br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:21-bk-12222-ER |
|---|---|
| | CHAPTER: 11 |
| | **STATEMENT REGARDING<br>CASH COLLATERAL OR<br>DEBTOR IN POSSESSION FINANCING<br>[FRBP 4001; LBR 4001-2]** |
| | DATE: To Be Determined<br>TIME:  To Be Determined<br>COURTROOM: 1568<br>ADDRESS:  255 E. Temple Street<br>                Los Angeles, CA  90071 |

| Secured party(ies):  SecureComm. LLC, a Washington limited liability company |
|---|

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both. The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No./Par. (if applicable) |
|---|---|---|
| ☒  (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | 1 | 21-27 |
| ☒  (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim" | 9 | 2-28 |
|     ☐  Cross-collateralization, *i.e.,* clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law | | |
|     ☒  Roll-up, *i.e.,* provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | 4 | 8-14 |

CKW 2709484v1

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.    0084

*December 2015*                                    Page 1                                **F 4001-2.STMT.FINANCE**

| Continued from page 1 | | |
|---|---|---|
| ☒    Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | 11-12 | 27-28; 1-10 |
| ☒   (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | 9-10 | 24-28; 1-9 |
| ☒   (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay"<br><br>☐   Automatic relief from the automatic stay upon occurrence of certain events. | 14 | 12-19 |
| ☐   (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐   (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☐   (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | |
| ☐   (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐   (ix): "[T]he indemnification of any entity" | | |
| ☒   (x): "[A] release, waiver, or limitation of any right under § 506(c)"<br>☐   The granting of any lien on any claim or cause of action arising under § 506(c) | DIP Fin. K | |
| ☐   (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| **Additional Disclosures Required by LBR 4001-2** | **Page No.:** | **Line No. (if applicable)** |
| ☒   With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | 6 | 3-6 |
| ☐   Pay down prepetition principal owed to a creditor | | |
| ☐   Findings of fact on matters extraneous to the approval process | | |

| 3/22/21 | David S. Kupetz | /s/ David S. Kupetz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CKW 2709484v1

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.    0085

*December 2015*       *Page 2*     **F 4001-2.STMT.FINANCE**