

**FILED & ENTERED**

**JUN 08 2021**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:   Collab9, LLC<br>          Debtor. | Case No.:   2:21-bk-12222-ER<br>Chapter:    11<br><br>**MEMORANDUM OF DECISION ON AVAYA'S MOTION TO DISMISS, CONVERT, OR APPOINT A CHAPTER 11 TRUSTEE**<br><br>**[RELATES TO DOC. NO. 148]**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

    On May 18, 2021, Avaya Inc. ("Avaya") filed a *Motion for Entry of Order Pursuant to 11 U.S.C. § 1112(b): (I) Dismissing the Case; (II) Converting the Case to a Chapter 7 Liquidation; or (III) Appointing a Chapter 11 Trustee* (the "Motion") [Doc. No. 148]. Pursuant to Civil Rule 78(b) and LBR 9013-1(j)(3),[1] the Court finds the Motion to be suitable for disposition without oral argument. For the reasons set forth below, the Motion is DENIED.

---

[1] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

# I. Facts and Summary of Pleadings
## A. Background

On March 19, 2021, Collab9, LLC (the "Debtor") filed its chapter 11 petition. The Debtor is a cloud security service provider for managed voice, collaboration, conferencing, and contact center services primarily for U.S. public sector customers. The Debtor has a special governmental authorization, known as FedRAMP, that certifies that the Debtor's services are highly secure and may be used by government agencies. Some of the Debtor's customers include the United States Customs and Border Protection and the Defense Nuclear Facilities Safety Board. First Schatzle Decl. at ¶ 23.

The Debtor states that its business operations have been severely undermined by Avaya, its largest creditor. The Debtor's relationship with Avaya began in 2017 when it executed an agreement whereby the Debtor would sell its services to Avaya, and Avaya would resell those services to its own customers (the "Master Agreement"). *Id.* at ¶¶ 59 & 61. In May of 2019, Avaya loaned the Debtor $10,000,000 under a convertible secured note in order to create a system that would streamline the relationship between the Debtor and Avaya/Avaya's customers. *Id.* at ¶ 61. The Debtor avers that during that same time, it was seeking a sale of its assets, but the terms of the convertible note prohibited the Debtor from entering into any relationship with another company. *Id.* Around the same time period, the Debtor asserts that Avaya began to develop a competing software in an effort to drive the Debtor out of business. *Id.* at ¶ 62. The Debtor argues that Avaya unilaterally terminated the Master Agreement in May of 2020 when it ceased business relations with the Debtor. *Id.* at ¶¶ 69 & 70. When the Debtor saw an impending liquidity crisis during 2020, it unsuccessfully reached out to Avaya and others to obtain additional funding. *Id.* at ¶ 77.

On April 1, 2021, the Debtor filed its Combined Bidding Procedures Motion and Sale Motion [Doc. No. 55]. The Court approved the bidding procedures portion of that motion on April 8, 2021. On May 20, 2021, the Court held a hearing and approved the sale of substantially all of the Debtor's assets to SecureComm, a company formed by the Debtor's equity holders. *See* Ruling on the Sale Motion [Doc. No. 153].

## B. Avaya's Motion

On May 19, 2021, Avaya filed the instant Motion. Avaya argues that the Debtor's chapter 11 filing was done in bad faith as an improper attempt to achieve a subordination of Avaya's $10 million claim to the interests of the Debtor's equity holders. Motion at 3. Avaya avers that the Debtor and its equity holders devised a scheme whereby the Debtor would file for bankruptcy and its equity holders would buy the Debtor's assets at a distressed price. *Id.* at 4. Avaya states that this case is nothing more than a two-party dispute between the Debtor and Avaya. Avaya reiterates most of the arguments that it made in Objection to the Sale Motion [Doc. No. 132]. Namely, Avaya asserts that the Debtor's equity holders were prepared to pay $15 million for the Debtor's assets pre-bankruptcy, but then sought to credit bid for the assets for less than $2 million. *Id.* at 5-6. Then, the equity holders would turn around and resell the assets to another buyer for a much higher price. *Id.* at 6.

Avaya asserts that "cause" exists under § 1112(b) to either dismiss or convert this case, Avaya believes that the petition was filed in bad faith, the Debtor's management has abandoned

any fiduciary duties to parties in interest and is acting solely in favor of its equity holders, and there is no possibility of rehabilitation. *Id.* at 8. Avaya states that the filing of the petition is an abuse of the bankruptcy process for the benefit of its insiders. Avaya also claims that there is no possibility for rehabilitation because there is a continuing negative cash flow of approximately $518,000 per month. *Id.* at 10-11. It contends that the Debtor's attempt to transfer the assets of the estate to its equity holders "does not offer a path for Debtor to regain financial viability." *Id.* at 12. In addition, Avaya believes there is cause to appoint a chapter 11 trustee because the Debtor's management and equity holders "have abandoned any fiduciary duty to Debtor and its estate and are operating this Chapter 11 Case solely to benefit the equity holders." *Id.* at 13.

### C. The Debtor's Opposition

On May 25, 2021, the Debtor filed its Opposition (the "Debtor's Opposition") [Doc. No. 160]. The Debtor argues that Avaya's Motion is nothing more than an attack on the Court's prior orders, including the Ruling on the Sale Motion. Debtor's Opposition at 5. The Debtor states that its case was not filed in bad faith and reiterates that it was unable to find any buyers who were interested in its assets other than SecureComm. *Id.* at 5. The Debtor argues that Avaya does not attempt to argue that dismissal or conversion is in the best interests of all creditors of the estate, because only Avaya would benefit from dismissal or conversion. *Id.* The Court has already concluded that the Debtor's filing was not in bad faith, according to the Debtor. By approving the sale to insiders after considering all arguments for and against such sale, the Debtor believes that none of Avaya's contentions have merit. *Id.* at 12.

The Debtor believes that Avaya has failed to establish "cause" under § 1112(b). Notably the Debtor argues that the filing of its bankruptcy was precipitated by the Debtor having a significant cash burn, the Debtor being unable to reach any agreement with Avaya as to their pending disputes, and the Debtor's need for a solution to its liquidity crisis. *Id.* at 15. In addition, the Debtor avers that this is not a two-party dispute because the Debtor has other significant creditors. *Id.* at 16. Furthermore, the Debtor again argues that the sale was not formulated as a scheme to transfer the Debtor's assets to its equity holders; rather, it was to implement an expeditious sale with the goals of preserving the Debtor's service to its customers. *Id.* at 16. The Debtor states that its management has not breached its fiduciary duties because "[t]he Court has already found and concluded that the Debtor acted in a reasonable, appropriate, good faith, arms-length manner." *Id.* at 17.

The Debtor's next contention is that the loss or diminution to the estate has been minimized as a result of the sale. Having successfully sold its assets, the Debtor plans to file a liquidating plan, which is a perfectly legitimate use of the bankruptcy process. *Id.* at 18. The most significant remaining asset of the estate, the Debtor argues, is the Debtor's claims against Avaya. *Id.* The Debtor notes that its claims against Avaya will be pursued and passed to a liquidating trust. *Id.* at 18-19. In addition, the Debtor's other creditors would not be better served by dismissal or conversion because the only party that would presumably benefit is Avaya. *Id.* at 19. Finally, the Debtor does not believe the appointment of a chapter 11 trustee is necessary because all of Avaya's arguments are, again, mere reiterations of its Objection to the Sale Motion. *Id.* at 20. The Debtor believes that because the Court approved of the hiring of an independent director and that director helped facilitate the arms-length sale, the sale of assets was not tainted by fraud or collusion. *Id.* at 21.

### C. The SecureComm Opposition

On May 26, 2021, SecureComm filed its Opposition ("SecureComm Opposition") [Doc. No. 161]. SecureComm reiterates most of the arguments that the Debtor made the Debtor's Opposition. SecureComm notes that Avaya is relying on the same arguments that it relied upon in its Objection to the Sale [Doc. No. 132] and which the Court already overruled. SecureComm Opposition at 2-3. In addition, SecureComm reiterates that this petition was not filed in bad faith because a sale of assets is a proper purpose for a bankruptcy proceeding. *Id.* at 3-4. SecureComm also argues that whether the Debtor can rehabilitate its business is irrelevant because the Debtor has already closed the sale. *Id.* at 4. Finally, SecureComm avers that "cause" does not exist to appoint a chapter 11 trustee because the sale has been consummated and appointment of a chapter 11 trustee would not be in the best interest of the estate or of the Debtor's other creditors. *Id.* at 4-6.

### D. Avaya's Reply

On June 2, 2021, Avaya filed its Reply [Doc. No. 169]. Avaya reiterates the arguments it made in its Motion as well as its Objection to the Sale. Avaya states: "there is evidence deserving of investigation that Debtor and Debtor's insiders acted in bad faith and in breach of fiduciary duties." Reply at 6. Avaya then argues that the Debtor's plan to file a liquidation plan proves that the Debtor's operations cannot be rehabilitated. *Id.* at 7.

Avaya reiterates its arguments that the Debtor's insiders breached their fiduciary duties because "the uncontested record before the Court reflects that Debtor's actions leading up to and during the case have sought to undermine, rather than prioritize, Avaya's interest and ability to recover the amount due under the Avaya Note." *Id.* at 8. Furthermore, Avaya believes that the Debtor's independent director's approval of the sale does not cleanse it of wrongdoing. Finally, Avaya argues that the director is not truly independent. *Id.* at 8-10.

## II. Findings of Fact and Conclusions of Law

Under § 1112(b), the Court shall dismiss or convert a case to one under chapter 7 upon a showing of "cause." 11 U.S.C. § 1112(b). Section 1112(b)(4) provides a nonexclusive list of factors that generally speak to a Debtor's failure to be proactive in a case or a Debtor's continued harm to the estate. However, "[t]he enumerated causes are not exhaustive, and 'the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'" *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) (quoting H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977)), *aff'd*, 264 F.3d 803 (9th Cir. 2001).

Avaya's Motion is no more than an attempt at a second bite of the proverbial judicial apple. Avaya argues that this case was filed in bad faith to allow the Debtor to sell its assets at a distressed price to insiders, the Debtor's management breached its fiduciary duties, and there is no possibility of rehabilitation of the Debtor's business. The Court has already disposed of all of these arguments in its ruling wherein it approved the sale of the Debtor's assets to the insiders. *See, e.g.,* Ruling on the Sale Motion. While the Court will respond to certain of Avaya's erroneous arguments, the Ruling on the Sale Motion entered on May 20, 2021, disposes of Avaya's arguments in greater detail.

First, the Court already found that the Debtor engaged in *extensive* negotiations with multiple companies, including one multi-billion dollar company where the Debtor spent approximately 200 hours responding to 446 questions submitted by this potential bidder and uploaded 322 documents to a shared data room. In addition, the Debtor's professionals spent 50-60 hours working with MelTech Corporation in an attempt to induce them to bid. The Debtor also exchanged 25-30 emails with ConvergeOne. Unfortunately, the only bidder to bid was SecureComm. However, a sale to insiders is not disallowed by the Bankruptcy Code; rather, it is subject to heightened scrutiny. When a Debtor carefully reviews all offers it receives, engages in extensive negotiations with multiple bidders, and the negotiations were fair and at arms-length, the court may approve an insider sale. *In re Latam Airlines Grp. S.A.*, 620 B.R. 722, 775 & 778-79 (Bankr. S.D.N.Y. 2020). Therefore, because the Debtor solicited numerous potential bidders and spent many hours working with them, the sale was done in good faith and at arms-length. *See* Ruling on the Sale Motion at 10-13.

The Court could not have approved the sale if it found that the Debtor's management breached its fiduciary duties. Avaya's arguments about the how the lead-up to the bankruptcy proves that the Debtor's insiders were simply trying to benefit themselves ignores the fact that the Court expressly granted the Debtor and SecureComm § 363(m) protections. Section 363(m) protects a good-faith purchaser from the reversal on appeal of a sale order, unless the sale order is stayed pending appeal. "A good faith buyer is one who buys 'in good faith' and 'for value.' '[L]ack of good faith is [typically] shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Paulman v. Gateway Venture Partners III (In re Filtercorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998) (internal citations omitted). The Court made findings that SecureComm was a good faith purchaser, and rejected Avaya's contention that SecureComm was going to turn around and sell the assets at a higher price because, if the assets were so valuable, Avaya could have come in and bid and then resold the assets for a higher price. Ruling on the Sale Motion at 17-19. Furthermore, the Court found that the Debtor marketed its assets extensively and there was no indication of any collusion in an attempt to prevent other bidders from bidding, or to drive the sale price down. *Id.* at 17-19.

Avaya's argument that the sale proves that the Debtor's business cannot be rehabilitated is unavailing for a handful of reasons. First, § 1112(b) reads, in pertinent part, that cause includes: "substantial or continuing loss to or diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A) (emphasis added). Avaya would need to prove both prongs of § 1112(b)(4)(A). It is true that pre-petition and during the bankruptcy the Debtor was operating at a significant loss. After the sale closed, however, the loss-causing assets were sold off and there is now no indication that there is a substantial or continuing loss to the estate. Furthermore, Avaya argues that the Debtor's plan to file a liquidating plan does not align with the Bankruptcy Code is incorrect. "Although the central purpose of Chapter 11 is to facilitate reorganizations rather than liquidations (covered generally by Chapter 7), Chapter 11 expressly contemplates liquidations." *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 37 n.2 (2008). The liquidating plan that the Debtor intends to file will provide for the treatment of the Debtor's main remaining asset, which is the litigation claims the Debtor has against Avaya. Debtor's Opposition at 18-19.

Avaya's attack on the Debtor's independent director ignores this Court's Ruling on the Sale Motion. The Court explicitly approved the hiring of the independent director and he was involved extensively with the sale process. *See* Doc. No. 104; *See also* Ruling on the Sale Motion at 12 & 18. Avaya's contention that the director's approval of the transaction does not cleanse the Debtor of wrongdoing also ignores the Court's Ruling on the Sale Motion wherein it found, based upon its own independent review and findings, that the sale was in good faith. Ruling on Sale Motion at 10-13. Finally, Avaya argues that "cause" exists under § 1104(a) to appoint a chapter 11 trustee. Avaya's arguments about the Debtor's bad faith and its management abandoning fiduciary duties are, as discussed above and in the Ruling on the Sale Motion, without merit. *Id.*

Based upon the foregoing, Avaya's Motion is DENIED. The Court will enter an order consistent with the Memorandum of Decision.

###

Date: June 8, 2021

Ernest M. Robles
United States Bankruptcy Judge